IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DECKERS OUTDOOR CORPORATION,<br><br>        Plaintiff,<br><br>v.<br><br>BEI DUO, et al.,<br><br>        Defendants. | Case No. 26-cv-00540<br><br>**Judge Matthew F. Kennelly**<br><br>**Magistrate Judge Daniel P. McLaughlin** |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR ENTRY OF
DEFAULT AND DEFAULT JUDGMENT AS TO ALL REMAINING DEFENDANTS**

Plaintiff Deckers Outdoor Corporation ("Deckers" or "Plaintiff") submits the following memorandum in support of its Motion for Entry of Default and Default Judgment under Fed. R. Civ. P. 55 against bei duo, CLOUSPO Direct, Comwarm, Cydmoty, DFEff, Djianx, DongQiaO, GH Ltd, Han Te-US Trading Ltd., ITAJIA, A clever rabbit, A GlobeGem, A Love yourself, a Simple girl, abenbenzhu, ApexEagle, AuraStride, B nice shoe, BanQu Slippers, Bifang Home Living, Binggo fashion shoes, Briht, Butterflys love, cai AA local, CBYY, chaopinkejiL, ChicNestBox, Coki, Colorful Xus Boutique, Comfortable home slippers, crazy shoes LH, D S Ninetyninth Shop, DUU Home Furnishing, Earnesthope, ERDAYE, Fashion Kitty, Fashion Supplier, Footwear Shop, Freefoot Shoe, GANG YUE, Geryt, GibaCat, GlamourSlippers, Gtlive, guGood shopping in the province, HAOHSHOP, HKTREKA, HKTWOJS, Home Cot Slippers a, Hot Hot Shoe Shop, Huimo Slippers, hykzykxy, Jinyu Men Slippers, Juan show shoes clothing, KLKIT, kuangzhil, LABADR, Li Dong Dong s best picks, lijianl, like wateras water, litshoes, Little Free Bird, lxiaoyong, LYYShoes, M F Home textiles, Magic Flower, MEISILING, Men Trend Slippers, and Mi Ju (collectively, the "Defaulting Defendants"), based on Plaintiff's action

1

for trade dress infringement under 15 U.S.C. § 1125(a) and violation of the Illinois Uniform Deceptive Trade Practices Act.

## STATEMENT OF FACTS

Plaintiff Deckers Outdoor Corporation is a corporation organized and existing under the laws of the state of Delaware with an office and principal place of business located in Goleta, California. [1] at ¶ 4. Deckers is well-known throughout the United States and elsewhere as a source of high quality footwear products, including the famous UGG brand of premium comfort-leisure footwear (the "UGG Products"). *Id.* at ¶ 5. UGG Products are distributed and sold to consumers through retailers throughout the United States, including over 100 authorized retailers in Illinois, the ugg.com website and UGG Concept Stores. *Id.* UGG Products have become enormously popular and even iconic, driven by Deckers' arduous quality standards and innovative design. *Id.* at ¶ 6. Among the purchasing public, genuine UGG Products are instantly recognizable as such. *Id.* In the United States and around the world, the UGG brand has come to symbolize high quality, and UGG Products are among the most recognizable premium footwear products in the world. *Id.*

For more than twenty years, Deckers has sold and marketed the UGG® Tasman®, which features the design elements protected under the Tasman® Trade Dress. *Id.* at ¶¶ 8, 17. The Tasman® Trade Dress is unique and inherently distinctive, and is comprised of the following non-functional elements:

a) An embroidered braid around the opening of the upper;

b) A raised prominent seam on the front part of the upper running longitudinally down the center of the upper;

c) A raised and rounded dome shaped toe;

d) A brushed suede-like exterior; and

2

e)      A thick, flat outsole.  *Id.*

The Tasman® Trade Dress, which is a composite of the above-referenced features, is non-functional in its entirety, visually distinctive, and unique in the footwear industry.  *Id.* at ¶ 18.

The UGG® Tasman®, the embodiment of the Tasman® Trade Dress, is one of the most well-recognized and commercially successful styles of UGG® brand footwear products, having been featured in many of Deckers' advertising and promotional materials as well as in various trade publications.  *Id.* at ¶ 20.  The UGG® Tasman® has received a large volume of unsolicited media attention, for example, through various celebrities seen wearing the UGG® Tasman®, and has graced the pages of many popular magazines nationwide and internationally.  *Id.*  Due to its long use, extensive sales, and significant advertising and promotional activities, Deckers' Tasman® Trade Dress has achieved widespread acceptance and recognition among the consuming public and trade throughout the United States.  *Id.* at ¶ 22.  Indeed, Deckers has sold millions of dollars' worth of the UGG® Tasman®, the embodiment of the Tasman® Trade Dress.  *Id.* Accordingly, the Tasman® Trade Dress has achieved a high degree of consumer recognition and secondary meaning, which serves to identify Deckers as the exclusive source of footwear featuring said trade dress.  *Id.*  Additional factual assertions regarding Plaintiff in Paragraphs 4-8 and 17-22 of the Complaint are incorporated herein.  *Id.* at ¶¶ 4-8, 17-22.

Defaulting Defendants are individuals and business entities of unknown makeup who, either individually or jointly, own and/or operate one or more of the e-commerce stores under at least the seller aliases identified in the Complaint (collectively, the "Seller Aliases").  *Id.* at ¶¶ 9-11.  Each Defaulting Defendant targets sales to Illinois residents by setting up and operating e-commerce stores that target U.S. consumers using one or more Seller Aliases, offer shipping to the U.S., including Illinois, accept payment in U.S. dollars, and on information and belief, has offered

for sale and/or sold unauthorized and unlicensed products embodying Plaintiff's Tasman® Trade Dress (the "Infringing Products") to residents of Illinois. *Id.* at ¶ 12; *see also* **Exhibit 1**.[1] Additional factual assertions regarding Defaulting Defendants in Paragraphs 9-15 of the Complaint are incorporated herein. *Id.* at ¶¶ 9-15.

Plaintiff filed this action on January 16, 2026. [1]. On January 28, 2026, this Court granted Plaintiff's Motions for Expedited Discovery and Electronic Service of Process Pursuant to Fed. R. Civ. P. 4(f)(3) (the "Order"). [12]. Paragraph 2 of the Order permitted Plaintiff to complete service of process as to Defendants by electronically publishing a link to the Complaint, the Order, and other relevant documents on a website and by sending an e-mail with an attachment of the relevant documents and a link to said website to an e-mail address for each Defendant. [12] at ¶ 2. Defendants were properly served on February 24, 2026. [15]. None of the Defaulting Defendants have filed an answer or otherwise pled in this action. *See* Declaration of Justin R. Gaudio (the "Gaudio Declaration") at ¶ 2.

Pursuant to Federal Rule of Civil Procedure 55(a) and (b)(2), Plaintiff now moves this Honorable Court for an Order entering default and default judgment finding that Defaulting Defendants are liable on all counts of Plaintiff's Complaint. Fed. R. Civ. P. 55(a) and (b)(2). Plaintiff further seeks an award of profits as authorized by 15 U.S.C. § 1117(a) for willful trade dress infringement against each of the Defaulting Defendants for their use of the Tasman® Trade Dress on products sold through each of the e-commerce stores operating under the Seller Aliases. Plaintiff also seeks entry of a permanent injunction prohibiting Defaulting Defendants from selling Infringing Products and an order that all assets in Defaulting Defendants' financial accounts, including those operated by Amazon, PayPal, and Temu, as well as any newly discovered assets,

---

[1] Attached as **Exhibit 1** is screenshot evidence for Defaulting Defendants which was previously submitted as Docket No. [1-1].

be transferred to Plaintiff up to the profit award. *See Soc'y of Lloyd's v. Estate of McMurray*, 274 F.3d 1133, 1135 (7th Cir. 2001) ("A district court may, however, summarily compel the application of discovered assets to satisfy a judgment.").

## **ARGUMENT**

### **I. JURISDICTION AND VENUE ARE PROPER IN THIS COURT**

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defaulting Defendants since each of the Defaulting Defendants directly targets business activities toward consumers in Illinois and causes harm to Plaintiff's business within this Judicial District. *See* [1] at ¶¶ 2, 11-12; *uBID, Inc. v. GoDaddy Grp., Inc.* 623 F.3d 421, 423-24 (7th Cir. 2010) (without benefit of an evidentiary hearing, plaintiff bears only the burden of making a *prima facie* case for personal jurisdiction; all of plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor).

Through at least the fully interactive, e-commerce stores operating under the Seller Aliases, each of the Defaulting Defendants has targeted sales from Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars from U.S. consumers, and, on information and belief, has sold Infringing Products to residents of Illinois. [1] at ¶¶ 2, 11-12. Personal jurisdiction exists over Defaulting Defendants since they directly target their business activities toward consumers in the United States, including Illinois. Specifically, Defaulting Defendants are reaching out to do business with Illinois residents by operating one or

more commercial, interactive e-commerce stores under the Seller Aliases through which Illinois residents can purchase Infringing Products. *Id. See NBA Properties, Inc. v. HANWJH,* 46 F.4th 614, 624-627 (7th Cir. 2022)*; see also Monster Energy Co. v. Wensheng,* 136 F. Supp. 3d 897, 906-08 (N.D. Ill. 2015).

## II. PLAINTIFF HAS MET THE REQUIREMENTS FOR ENTRY OF DEFAULT

Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Plaintiff filed its Complaint alleging federal trade dress infringement (15 U.S.C. § 1125(a)) (Count I) and violation of the Illinois Uniform Deceptive Trade Practices (815 ILCS § 510, *et seq.*) (Count II). [1]. Defendants were properly served, and none of the Defaulting Defendants have filed an answer or otherwise pled in this action. Gaudio Declaration at ¶ 2. Upon information and belief, the Defaulting Defendants are not active-duty members of the U.S. armed forces. *Id.* at ¶ 3. Accordingly, Plaintiff asks for entry of default against the Defaulting Defendants.

## III. PLAINTIFF HAS MET THE REQUIREMENTS FOR ENTRY OF DEFAULT JUDGMENT

Rule 55(b)(2) of the Federal Rules of Civil Procedure provides for a court-ordered default judgment. A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action alleged in the complaint. *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989). When the Court determines that a defendant is in default, the factual allegations of the complaint are taken as true and may not be challenged, and the defendants are liable as a matter of law as to each cause of action alleged in the complaint. *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994).

The answer deadline has passed and no answer or other responsive pleading has been filed by any of the Defaulting Defendants. *See* Fed. R. Civ. P. 12(a)(1)(A). Accordingly, default judgment is appropriate, and Plaintiff requests an award of profits as authorized by 15 U.S.C. § 1117(a) for willful trade dress infringement against each of the Defaulting Defendants for their use of the Tasman® Trade Dress on products sold through the e-commerce stores operating under the Seller Aliases. Plaintiff also seeks entry of a permanent injunction prohibiting Defaulting Defendants from selling Infringing Products and an order that all assets in Defaulting Defendants' financial accounts, including those operated by Amazon, PayPal, and Temu, as well as any newly discovered assets, be transferred to Plaintiff.

To properly plead a claim of trade dress infringement pursuant to the Lanham Act, a plaintiff must allege that (1) its trade dress is either inherently distinctive or has acquired secondary meaning, (2) its trade dress is nonfunctional, and (3) that the similarity of the defendant's trade dress causes a likelihood of confusion on the part of consumers as to the source or affiliation of the products. *Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1015 (7th Cir. 2005); *Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277, 285, 291 (7th Cir. 1998).

Plaintiff alleged in its Complaint that the Tasman® Trade Dress is exclusive to Plaintiff. [1] at ¶ 22. Plaintiff further alleged that the Tasman® Trade Dress is inherently distinctive and has acquired secondary meaning. *Id.* at ¶¶ 17, 22. Due to its long use, extensive sales, and significant advertising and promotional activities, the Tasman® Trade Dress has achieved widespread acceptance and recognition among the consuming public and trade throughout the United States. *Id.* at ¶ 22. Indeed, Plaintiff has sold millions of dollars' worth of its line of footwear embodying the Tasman® Trade Dress. *Id.* Accordingly, the Tasman® Trade Dress has

achieved a high degree of consumer recognition and secondary meaning, which serves to identify Plaintiff as the exclusive source of footwear featuring said trade dress. *Id.*

Plaintiff also alleged in its Complaint that Defaulting Defendants have designed, manufactured, advertised, promoted, distributed, sold, and/or offered for sale products using a confusingly similar version of the Tasman® Trade Dress, that Defaulting Defendants have knowledge of Plaintiff's rights in the Tasman® Trade Dress, that Defaulting Defendants are not authorized to use the Tasman® Trade Dress, and that Defaulting Defendants' use of the Tasman® Trade Dress causes a likelihood of confusion. *Id.* at ¶¶ 24-26.

Plaintiff further alleged in its Complaint that Defaulting Defendants have engaged in acts violating Illinois law including, but not limited to, passing of their Infringing Products as those of Plaintiff's, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine UGG Products, representing that their products have Plaintiff's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public. *Id.* at ¶ 30.

Since the Defaulting Defendants have failed to answer or otherwise plead in this matter, the Court must accept the allegations contained in Plaintiff's Complaint as true. *See* Fed. R. Civ. P. 8(b)(6); *Am. Taxi Dispatch, Inc. v. Am. Metro Taxi & Limo Co.,* 582 F. Supp. 2d 999, 1004 (N.D. Ill. 2008). Accordingly, Plaintiff requests entry of judgment with respect to Counts I and II for willful trade dress infringement and violation of the Illinois Uniform Deceptive Trade Practices Act against the Defaulting Defendants.

IV.     **PLAINTIFF IS ENTITLED TO A PROFITS AWARD**

Pursuant to 15 U.S.C. § 1117(a), where a violation under Section 1125(a) has been established, "the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of

8

this title, and subject to the principles of equity" to recover Defendants' profits. 15 U.S.C. § 1117(a). Further, "[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." *Id. See Dyson Tech. Ltd. v. David 7 Store*, 132 F.4th 526, 529 (7th Cir. 2025) ("The statutory scheme devised by Congress supplies the marching orders here: [Plaintiff] provided uncontested evidence of revenue, which suffices as profits when assessing [Plaintiff's] recovery under the Lanham Act."). In other words, "it is the infringer's burden to prove any proportion of his total profits which may not have been due to use of the infringing mark." 5 McCarthy on Trademarks § 30:65. "There may be a windfall to the trademark owner where it is impossible to isolate the profits which are attributable to the use of the infringing mark. But to hold otherwise would give the windfall to the wrongdoer." *WMS Gaming, Inc. v. WPC Prods. Ltd*., 542 F.3d 601, 608 (7th Cir. 2008) (quoting *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co*., 316 U.S. 203, 206-07 (1942)).

In cases where defendants have failed to produce documents to characterize revenue or claim any deduction, courts have entered a profits award for the entire revenue amount. *See Dyson Tech. Ltd.*, 132 F.4th at 529 ("The Act presumes that the infringing defendant's sales (that is, revenue) and profits are the same thing, until the defendant proves otherwise."); *see also WMS Gaming, Inc. v. WPC Prods. Ltd.*, 542 F.3d 601, 608 (7th Cir. Ill. 2008) ("[t]he burden was therefore on [defendant] to show that certain portions of its revenues…were not obtained through its infringement of WMS's marks."); *Chloe v. Queen Bee of Beverly Hills*, 2009 U.S. Dist. LEXIS 84133, at *15-17 (S.D.N.Y. Jul. 16, 2009) (entering profits award for the entire revenue amount in trademark infringement case even though "records offer no guidance as to how much of this revenue stream related to [Plaintiff's] products [as opposed to other products not at issue in this case] or as to the costs incurred in acquiring and selling these products.").

Since Defaulting Defendants have chosen not to participate in these proceedings, Plaintiff has limited available information regarding Defaulting Defendants' profits from the sale of Infringing Products. *See Dyson Tech. Ltd.*, 132 F.4th at 529 ("A trademark plaintiff need not disentangle revenue and profits."). As such, Defaulting Defendants have not met their burden to apportion gross receipts between infringing and non-infringing product sales, or to show any deductions. *WMS Gaming, Inc. v. WPC Prods. Ltd*., 542 F.3d 601, 608 (7th Cir. 2008).

The limited information provided by Amazon and Temu indicates that the sum of the known revenue generated by Defaulting Defendants from the sale of Infringing Products is up to at least $3,887,672.75. Gaudio Declaration at ¶ 4. Because Defaulting Defendants have failed to participate in the proceedings, Plaintiff is unable to obtain information regarding additional e-commerce stores owned by Defaulting Defendants and/or additional products sold by Defaulting Defendants that infringe the Tasman® Trade Dress.

Since Defaulting Defendants have not met their burden of apportioning gross sales or showing any deductions, the Court should award the known Infringing Products revenue generated by each Defaulting Defendant. *See* Gaudio Declaration at ¶ 5.

## V.     PLAINTIFF IS ENTITLED TO PERMANENT INJUNCTIVE RELIEF

In addition to the foregoing relief, Plaintiff respectfully requests entry of a permanent injunction enjoining Defaulting Defendants from infringing or otherwise violating Plaintiff's rights in the Tasman® Trade Dress. Plaintiff is also entitled to injunctive relief so it can quickly take action against any new e-commerce stores selling Infringing Products that are found to be linked to Defaulting Defendants. *See Burberry Limited, et al. v. The Partnerships, et al,* No. 1:14-cv-08220 (N.D. Ill. Dec. 11, 2014) (Docket Nos. 44 and 45) (unpublished); *Oakley, Inc. v. The Partnerships, et al.,* No. 1:13-cv-02958 (N.D. Ill. June 17, 2013) (Docket Nos. 36 and 37) (unpublished).

10

For permanent injunctive relief, a plaintiff must establish "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be dissemed by a permanent injunction." *MetroPCS v. Devor*, 215 F. Supp. 3d 626, 639 (N.D. Ill. 2016).

**A. Plaintiff Does Not Have an Adequate Remedy at Law and Will Suffer an Irreparable Injury Should Defaulting Defendants' Actions Not Be Enjoined.**

"[I]t is well-established in the Seventh Circuit that irreparable harm and inadequate remedy at law are presumed in trademark and trade dress infringement cases." *MetroPCS*, 215 F. Supp. 3d at 639 (collecting cases). Further, "[n]o adequate remedy at law exists because absent permanent injunctive relief, [Plaintiff] would be forced to repeatedly file suit any time [Defaulting] Defendants, who have shown complete disregard for their legal obligations and the jurisdiction of this Court, infringe Plaintiff's trademark rights in the future." *MetroPCS*, 215 F. Supp. 3d at 639.

Even absent any presumption, the Seventh Circuit has "continued to recognize that 'irreparable harm is especially likely in a trademark case because of the difficulty of quantifying the likely effect on a brand of a nontrivial period of consumer confusion (and the interval between the filing of a trademark infringement complaint and final judgment is sure not to be trivial).'" *Luxottica Group, S.p.A. v. Light In The Box Ltd*., 2016 U.S. Dist. LEXIS 144660, at *15 (N.D. Ill. 2016) (quoting *Kraft Foods Group Brands LLC v. Cracker Barrel Old Country Store, Inc*., 735 F.3d 735, 740 (7th Cir. 2013)). Defaulting Defendants' attempt to "piggyback" off Plaintiff's efforts through the unauthorized use of the Tasman® Trade Dress has and continues to irreparably harm Plaintiff through diminished goodwill and damage to its reputation. *See* [1] at ¶¶ 23, 32. The extent of the harm to Plaintiff's reputation and the goodwill associated therewith and the possible diversion of customers due to loss in brand confidence are both irreparable and

incalculable, thus warranting an immediate halt to Defaulting Defendants' infringing activities through injunctive relief. *Trans Union LLC v. Credit Research, Inc*., 142 F. Supp. 2d 1029, 1046 (N.D. Ill. 2001).

### B. The Balancing of Harms Tips in Plaintiff's Favor and Issuance Is in the Public Interest

As willful infringers, Defaulting Defendants are entitled to little equitable consideration. There is no harm to the defendant to being enjoined from violating the law, and the public interest is served by eliminating potential consumer confusion. *River Light V, L.P. and Tory Burch LLC v. Zhangyali, et al.,* 2016 U.S. Dist. LEXIS 111301, at *13-14 (N.D. Ill. Aug. 22, 2016). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc*. *v. Cellular Telecomms. Indus. Ass'n,* 929 F. Supp. 473, 478 (D.D.C. 1996).

If Defaulting Defendants' trade dress infringement continues, Plaintiff will lose potential profits and risk consumers associating Defaulting Defendants' inferior Infringing Products with Plaintiff. *See Coach, Inc. v. 3D Designers Inspirations*, 70 F. Supp. 3d 942, 950 (C.D. Ill. 2014). On the other hand, a permanent injunction may only harm Defaulting Defendants' profits if it is forced to stop selling Infringing Products, but Defaulting Defendants "never had a legal right to profit from such counterfeiting." *Id.* Additionally, "the monetary benefits that [Defaulting] Defendants receive from their actions are not benefits to be protected from injury." *MetroPCS*, 215 F. Supp. 3d at 640 (citations omitted).

Finally, "the public interest lies in favor of upholding property interests in trademarks and preventing consumer confusion." *MetroPCS*, 215 F. Supp. 3d at 640 (citations omitted). "[G]ranting an injunction under these circumstances serves the public's interest in not being deceived about the products they are purchasing." *Miyano Mach. USA, Inc. v. Miyanohitec Mach.,*

12

*Inc.*, 576 F. Supp. 2d 868, 889 (N.D. Ill. 2008). Accordingly, a permanent injunction against Defaulting Defendants is appropriate.

## **CONCLUSION**

Plaintiff respectfully requests that the Court enter default and default judgment against each Defaulting Defendant, award profits against each Defaulting Defendant pursuant to 15 U.S.C. § 1117(a), and enter a permanent injunction order prohibiting Defaulting Defendants from selling Infringing Products, and transferring all assets in Defaulting Defendants' financial accounts to Plaintiff up to the profit award amount.

Dated this 23rd day of March 2026.      Respectfully submitted,

/s/ Justin T. Joseph
Amy C. Ziegler
Justin R. Gaudio
Justin T. Joseph
Luana Faria de Souza
Greer, Burns & Crain, Ltd.
200 West Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
jjoseph@gbc.law
lfaria@gbc.law

*Counsel for Plaintiff Deckers Outdoor Corporation*

13