IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DECKERS OUTDOOR
CORPORATION,

               Plaintiff,

      v.

bei duo, et *al*,

               Defendants.

Case No. 26-cv-00540

Judge Matthew Kennelly

Magistrate Judge Daniel P. McLaughlin

**MEMORANDUM IN SUPPORT OF MOTION TO VACATE DEFAULT JUDGMENT, DISMISS WITH PREJUDICE, AND FOR SANCTIONS OR IN THE ALTERNATIVE FOR LEAVE TO ANSWER OR OTHERWISE PLEAD**

## TABLE OF CONTENTS

DECKERS' JUDGE-SHOPPING SCHEME ..........................................................................................1

WHEN DECKERS FINISHED JUDGE SHOPPING ....................................................................4

PROCEDURAL HISTORY OF THIS CASE ................................................................................5

ARGUMENT ..............................................................................................................................7

    I.    Judgment Should Be Vacated On Grounds Of Surprise. Comwarm was
        Surprised By The Quick Entry Of Default And Default Judgment......................................7

    II.    Comwarm has "Good Cause" for Setting Aside the Default Judgment ...............................8

        A.    Comwarm Took Quick Action to Vacate the Default..........................................9

        B.    Comwarm Has Numerous Meritorious Defenses ................................................9

            1.    This Court Lacks Jurisdiction over Comwarm ..........................................10

                a.    The Hague Service Convention Applies and Is Mandatory. .................11

                b.    China Has Objected to Alternative Service Channels, Including Email Service.....11

            2.    Rule 41 Bars Deckers' Claims ................................................................13

            3.    Deckers Lacks Trade Dress Rights in the Claimed TASMAN Trade Dress..............16

                a.    Deckers' Claimed Trade Dress Is Generic and Unprotectable..............................17

                b.    Deckers' Claimed Trade Dress in the TASMAN Slipper Has
                    not Attained Secondary Meaning. ..........................................................18

                c.    Deckers' Claimed Trade Dress Is Functional and Therefore Unprotectable.........21

    III.    The Judgment Against Comwarm Should Be Vacated Because
        Deckers Obtained it Through Egregious Litigation Misconduct........................................22

        A.    Judge Shopping is Bad. .....................................................................................22

        B.    Pinching is Judge Shopping................................................................................23

        C.    Deckers' Egregious Litigation Misconduct Warrants Vacatur. ..........................24

            1.    Default Judgment Should be Vacated Because of Deckers'
                Egregious Litigation  Misconduct. ...........................................................24

            2.    Courts Have Authority to Levy Sanctions under § 1927 and the
                Court's Inherent Authority. ......................................................................25

            3.    There are A Range of Sanctions Appropriate for Plaintiffs Who
                Engage In Judge Shopping.......................................................................26

            4.    Sanctions Are Necessary to Compensate for the Harm it has Caused
                and to Deter Deckers from Engaging in Judge Shopping in the Future.............26

            5.    Deckers Has Engaged in Judge Shopping Here and Has Used
                Judge-Shopping Schemes Pervasively in this District – Securing Tens
                of Millions of Dollars in Judgments from Defendants Whose Cases

Should Have been Dismissed with Prejudice Had Deckers Not Concealed its Pinching Scheme. ..................................................................................27

6. Monetary Sanctions...........................................................................28

7. The Court Should Also Impose Non-Monetary Sanctions for Deckers' Brazen Judge Shopping Schemes. ...........................................29

IV. Alternative Relief .........................................................................................29

CONCLUSION.........................................................................................................29

## TABLE OF AUTHORITIES

**Cases**

*Acosta v. DT & C Glob. Mgmt., LLC,*
  874 F.3d 557 (7th Cir. 2017) ...................................................................................................10

*Berthhold Types Ltd. V. Adobe Sys.,*
  242 F. 3d 772 (2001) ...............................................................................................................15

*Blue Sphere, Inc. v. Schedule A,*
  No. 1:22-cv-05599 (N.D. Ill. Jan. 31, 2023) .............................................................................1

*Bose Corp. v. Schedule A Defendants,*
  No. 19-cv-7467, 2019 WL 6210939 (N.D. Ill. Nov. 21, 2019) ............................................1, 22

*C.K.S. Eng'rs, Inc. v. White Mountain Gypsum Co.,*
  726 F.2d 1202 (7th Cir. 1984) .................................................................................................16

*Chambers v. NASCO, Inc.,*
  501 U.S. 32 (1991) ...................................................................................................................25

*Clark v. Tarrant Cnty.,*
  798 F.2d 736 (5th Cir. 1986) ...................................................................................................13

*Cook v. Starling,*
  104 F.R.D. 468 (D.C. Ill. 1985) ...............................................................................................14

*Cracco v. Vitran Exp.,*
  559 F.3d 625 (7th Cir. 2009) ................................................................................................7, 16

*Deckers Outdoor Corp. v. bei duo,*
  No. 26-cv-00108 (Gottschall, J.) (Feb. 4, 2026) ....................................................................3, 14

*Deckers Outdoor Corp. v. bei duo,*
  No. 26-cv-00157 (Ellis, J.)(Feb. 4, 2026) ...............................................................................3, 14

*Deckers Outdoor Corp. v. bei duo,*
  No. 26-cv-00268 (Harjani, J.) (Jan. 28, 2026) .......................................................................4, 14

*Deckers Outdoor Corp. v. bei duo,*
  No. 26-cv-381 (Cummings, J.) (Feb. 12, 2026) ......................................................................4, 14

*Deckers Outdoor Corp. v. It's Friday, Inc.,*
  No. 20-CV-10602 (VSB) (BCM), 2024 WL 5481211 (S.D.N.Y. Oct. 31, 2024),
  *report and recommendation adopted,* No. 20-CV-10602 (VSB) (BCM),
  2025 WL 886882 (S.D.N.Y. Mar. 21, 2025) .............................................................................21

*Deckers Outdoor Corp. v. Last Brand, Inc.*
  No. 23-cv-04850, 2025 U.S. Dist. Lexis 195922 (N.D. Cal. Oct. 2, 2025) .......................4, 17, 18

*Delgado v. I.C. System,*
  No. 17-cv-04918, 2020 U.S. Dist. LEXIS 161367 (N.D. Ill. Sep. 3, 2020) ...........................9, 10

*Doe v. Schedule A Defendants,*
  No. 20-cv-4099 (N.D. Ill. July 14, 2020) .................................................................................22

*Dongguan Deego Trading Co. v. Junyao-US,*
No. 25 C 4962, 2025 WL 2174325 (N.D. Ill. Jul. 31, 2025) ........................................ 24, 25, 26

*Easy Spirit, LLC v. Skechers U.S.A., Inc.,*
515 F. Supp. 3d 47 (S.D.N.Y. 2021) ........................................................................19

*Eldon Industries v. Rubbermaid, Inc.,*
735 F. Supp. 786 (N.D. Ill. 1990) ...........................................................................19

*Fuery v. City of Chicago,*
900 F.3d 450 (7th Cir. 2018) ..................................................................................25

*Goodyear Tire & Rubber Co. v. Haeger,*
581 U.S. 101 (2017) ...............................................................................................25

*HiSpec Wheel & Tire v. Tredit Tire & Wheel,*
2007 U.S. Dist. LEXIS 1870 (N.D. Ind. Jan. 8, 2007) ............................................19

*In re Bellsouth,*
334 F.3d 941 (11th Cir. 2003) ................................................................................23

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee,*
456 U.S. 694 (1982) ...............................................................................................10

*Inwood Labs. v. Ives Labs.,*
456 U.S. 844 (1982) ...............................................................................................21

*Kangol LLC v. Hangzhou Chuanyue Silk Import,*
No. 25-2205 (7th Cir.) ............................................................................................12

*Kapco Mfg. Co. v. C & O Enters., Inc.,*
886 F.2d 1485 (7th Cir. 1989) ...............................................................................26

*Kotsilieris v. Chalmers,*
966 F.2d 1181 (7th Cir. 1992) ...............................................................................25

*Lavela v. Gilbert,*
No. 24-2582, 2025 U.S. App. LEXIS 5768 (7th Cir. Mar. 12, 2025) .................13, 15

*Luxottica Grp. S.p.A. v. P'ships & Unincorporated Ass'ns,*
391 F. Supp. 3d 816 (N.D. Ill. 2019) ......................................................................12

*M OU v. Schedule A Defendants,*
No. 25-cv-13203 (Nov. 25, 2025) ...........................................................................26

*Madu, Edozie & Madu v. SocketWorks Ltd. Nigeria,*
265 F.R.D. 106 (S.D.N.Y. 2010) .............................................................................13

*Marshall Amplification v. Xingrunshangmao,*
No. 25-cv-13829 (Blakey, J.) .............................................................................24, 27

*Meinders, D.C. v. United Healthcare Servs.,*
No. 20-cv-2832, 2021 WL 3234918 (7th Cir. Jul. 30, 2021) ....................................15

*Milwaukee Electric Tool Corp. v. Individuals, Corps., Ltd. Liability Cos.,*
*P'ships, & Unincorporated Associations Identified on Schedule "A",*
No. 24 C 12487, 2025 U.S. Dist. LEXIS 216016 (N.D. Ill. Nov. 3, 2025) ................16

*National Presto Industries v. United States Merchants Financial Group,*
No. 18-cv-03321 (SRN/BRT), 2021 U.S. Dist. LEXIS 114054 (D. Minn. June 18, 2021) ........19

*Noco Co. v. Chang,*
No. 1:20-cv-2437, 2021 WL 1192212 (N.D. Ohio Mar. 30, 2021) ............................................12

*Oxbow Energy v. Koch Indus.,*
686 F. Supp. 278 (D. Kan. 1988) ..............................................................................................23

*Paragon Sales & Services v. Onyx Arms International,*
No. 93 C 4039, 1997 U.S. Dist. LEXIS 2315 (N.D. Ill. Feb. 25, 1997) ....................................14

*Pedrina v. Chun,*
987 F.2d 608 (9th Cir. 1993) ....................................................................................................15

*Philos Techs. v. Philos & D,*
645 F.3d 851 (7th Cir. 2011) ....................................................................................................11

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'hip,*
507 U.S. 380 (1993) ....................................................................................................................8

*Pretzel & Stouffer v. Imperial Adjusters,*
28 F.3d 42 (7th Cir. 1994) ........................................................................................................17

*Qualitex Co. v. Jacobson Prods. Co.,*
514 U.S. 159 (1995) ..................................................................................................................21

*Roulo v. Russ Berrie & Co.,*
1986 U.S. Dist. LEXIS 26859 (N.D. Ill. April 14, 1986),
*aff'd,* 886 F.2d 931 (7th Cir. 1989) ..........................................................................................18

*Sanders v. Melvin,*
25 F.4th 475 (7th Cir. 2022) ....................................................................................................26

*Smart Study v. Shenzhenshixindajixieyouxiangongsi,*
164 F.4th 164 (2d Cir. Dec. 18, 2025) ................................................................................11, 12

*Standing Comm. On Discipline of the U.S. Dist. Ct. for the Cent. Dist. of Cal. v. Yagman,*
55 F.3d 1430 (9th Cir. 1995) ....................................................................................................23

*Stiebritz v. Schedule A,*
No. 1:25-cv-03459 (N.D. Ill. Apr. 9, 2025)..............................................................................24

*Taylor v Brown,*
787 F.3d 851 (7th Cir. 2015) ..............................................................................................15, 16

*Tone Brothers v. Sysco,*
28 F.3d 1192 (Fed. Cir. 1994) ..................................................................................................19

*Toyo Tire & Rubber Co. v. Atturo Tire Corp.,*
No. 14-cv-00206, 2019 U.S. Dist. LEXIS 219398 (N.D. Ill. Dec. 20, 2019)............................18

*TrafFix Devices, v. Marketing Displays,*
532 U.S. 23 (2001) ..............................................................................................................21, 22

*Two Pesos, Inc. v. Taco Cabana, Inc.,*
505 U.S. 763 (1992) ............................................................................................................17, 18

*U.S. v. Phillips,*
 59 F. Supp. 2d 1178 (D. Utah 1999) ...................................................................................23

*United States v. Conforte,*
 457 F. Supp. 641(D. Nev. 1978),
 aff'd, 624 F.2d 869 (9th Cir. 1980) .................................................................................23

*United Student Aid Funds, Inc. v. Espinosa,*
 559 U.S. 260 (2010) .........................................................................................................11

*Vaqueria Tres Monjitas, Inc. v. Rivera Cubano,*
 341 F. Supp. 2d 69 (D.P.R. 2004) ...................................................................................23

*Volkswagenwerk Aktiengesellschaft v. Schlunk,*
 486 U.S. 694 (1988) .........................................................................................................11

*Waetzig v. Halliburton Energy Services, Inc.,*
 145 S. Ct. 690 (2025) .......................................................................................................14

*Wal-Mart Stores v. Samara Brothers,*
 529 U.S. 205 (2000) ................................................................................................5, 18, 19

*Walter v. Fiorenzo,*
 840 F.2d 427 (7th Cir. 1988) ...........................................................................................25

*Widmar v. Sun Chemical Corp.,*
 No. 11 C 1818, 2012 U.S. Dist. LEXIS 55414 (N.D. Ill. Apr. 19, 2012) ......................14

*Xped LLC v. Entities Listed on Exhibit 1,*
 690 F. Supp. 3d 831 (N.D. Ill. 2023) ..............................................................................26

*Yong-Qian Sun v. Board of Trustees,*
 473 F.3d 799 (7th Cir. 2007) ...........................................................................................16

## Statutes

28 U.S.C. § 1927 .....................................................................................................................25

Lanham Act Section 43 ......................................................................................................10, 18

## Other Authorities

2 J. Thomas McCarthy,
 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION,
 § 15.30 (4th ed. 1999) ......................................................................................................19

## Rules

Fed. R. Civ. P. 15 ................................................................................................................2, 15

Fed. R. Civ. P. 41 .............................................................................................................passim

Fed. R. Civ. P. 55 .....................................................................................................................7

Fed. R. Civ. P. 60 .............................................................................................................passim

"Let me be a hundred percent clear on this. Clients have some latitude at picking a forum. Clients have no latitude picking a judge. Judge shopping ain't a thing here or anywhere else."

- Hearing Transcript at 6-7, *Blue Sphere, Inc. v. Schedule A*, No. 1:22-cv-05599 (N.D. Ill. Jan. 31, 2023), ECF 35 (Judge Steven C. Seger) (Attached as Ex F).

Plaintiff Deckers, with the assistance of its counsel, Greer Burns and Cain, and its attorneys, Amy Crout Ziegler, Hannah Elizabeth Dawson, Luana Faria De Souza, Justin Gaudio (and potentially others) (hereafter collectively referred to as "Greer Burns") are engaged in a widespread scheme to manipulate this Court's random judge selection process, engaging in egregious judge shopping. Deckers' scheme, as implemented by Greer Burns, undermines the integrity of this Court, wastes judicial resources, causes confusion well beyond the baseline chaos typical of the maligned "Schedule A" case type. As Judge Durkin said in *Bose Corp. v. Schedule A Defendants,* No. 19-cv-7467, 2019 WL 6210939 at *1 (N.D. Ill. Nov. 21, 2019), the practice "must stop."

Deckers' judge shopping scheme is one of many reasons that this Court should set aside the default judgment. The scheme provides an independent ground for vacatur, but also masked other defects in Deckers' pleadings that should have also led to dismissal, not default. These issues are on top of the lack of a merits case that would ordinarily support any run-of-the-mill motion to vacate. But as more fully explained below, this case and its part in the much larger judge-shopping scheme that Deckers has hatched, makes this case anything but run-of-the mill.

## DECKERS' JUDGE-SHOPPING SCHEME

Plaintiff Deckers took several tries to get this case before Judge Kennelly. After filing, "pinching," and dismissing four prior actions assigned to Judges Gottschall, Ellis, Harjani, and Cummings, Deckers finally decided to proceed with the same two claims against the present 71 defendants. Specifically, Deckers is using a judge-shopping scheme referred to as "pinching." Deploying the scheme, Deckers files a complaint against numerous defendants, attempting mass

1

joinder. If it likes that judge, it prosecutes the case. If it does not, it uses the Rule 15 amendment-as-of-right process to "pinch" the case almost immediately, down to just a single defendant from its multiple original defendants. One more step completes the scheme. A refiling of the identical case (minus the one defendant) immediately follows, now randomly assigned to a new judge, carefully marking such refiling as an "original action" on the civil cover sheet. Rinse and repeat as needed before the "right" judge presides over the bulk of the case. Ostensibly less important "pinched" parties temporarily stay as lone defendants with earlier judges – who Deckers appears to believe have reputations for scrutinizing mass joinder cases like this one.

The present case shows exactly this judge-shopping-by-pinching scheme. On the two-count trade dress complaint concerning the claimed trade dress in TASMAN shearling suede slippers, Deckers' "pinching" judge-shopping scheme in this case looks like this:

| Filing Date | Case No. | Trade Dress Asserted | Assigned Judge | No. of Defendants[1] | Deckers' Action | Pinch Amendment |
|---|---|---|---|---|---|---|
| 01-07-26 | 26-cv-108 | TASMAN | Gottschall | 75 | Amended to drop all but one defendant. | 01-07-26 (Dkt 8) |
| 01-07-26 | 26-cv-157 | TASMAN | Ellis | 74 | SAME | 01-08-26 (Dkt 9) |
| 01-09-26 | 26-cv-268 | TASMAN | Harjani | 73 | SAME | 01-12-26 (Dkt 9) |
| 01-13-26 | 26-cv-381 | TASMAN | Cummings | 72 | SAME | 01-15-26 (Dkt 8) |
| 01-16-26 | 26-cv-540[2] | TASMAN | Kennelly | 71 | FINISHED SHOPPING | N/A |

This "pinch" scheme implicates not just public matters of court-system integrity, but also private rights. By the time these "pinched" cases appeared before Judge Harjani (two judges ago), the very scheme gave each and every one of the remaining 73 defendants an unassailable claim preclusion / *res judicata* defense, by operation of Fed. R. Civ. P. 41 and its prohibition against third (and further) filings after two voluntary dismissals. This is supported, with case law, in detail below.

---

[1] The number of defendants listed before amendment include defendant Comwarm here.

[2] Docket numbers are hyper-linked to the publicly available dockets on the website Court Listener.

By the time this case was assigned to Judge Kennelly on January 20, 2026, each of the previously-filed TASMAN trade dress cases had been "pinched," and each pending action had only a single defendant remaining. Almost immediately after ramping up before this Court and filing its motion to bypass the Hague Convention and serve by email (Dkt No. 9), it began dismissing out the solo "pinched" defendants in earlier-numbered cases.[3]

Deckers dismissed the lone defendant in each of the "pinched" cases shortly after amending, *id.,* so that by the time the clerk or any judge examined the civil cover sheet for "related cases," those cases were no longer pending. Indeed, by the time that Deckers returned the summons executed as to the 71 "unpinched" defendants on February 24, 2026, every single "related" case involving the remaining "pinched" defendants" had been voluntarily dismissed under Rule 41(a)(1)(a):

| Filing Date | Case No. | Assigned Judge | Date of Rule 41 Dismissal of Pinched Defendant | Civil Cover Sheet Related Cases[4] |
|---|---|---|---|---|
| 01-07-26 | 26-cv-108 | Gottschall | 02-04-26 | N/A |
| 01-07-26 | 26-cv-157 | Ellis | 02-04-26 | Gottschall (26-108) |
| 01-09-26 | 26-cv-268 | Harjani | 01-28-26 | Ellis (26-157) Gottschall (26-108) |
| 01-13-26 | 26-cv-381 | Cummings | 02-12-26 | Harjani (26-268) Ellis (26-157) Gottschall (26-108) |
| 01-16-26 | 26-cv-540 | Kennelly | N/A | Cummings, Harjani, Ellis, and Gottschall |

*See Deckers Outdoor Corp. v. bei duo,* No. 26-cv-00108 (Gottschall, J.) (Dkt 14) (Feb. 4, 2026) (voluntarily dismissing remaining defendant); *Deckers Outdoor Corp. v. bei duo,* No. 26-cv-00157 (Ellis, J.) (Dkt 13) (Feb. 4, 2026) (same); *Deckers Outdoor Corp. v. bei duo,* No. 26-cv-00268

---

[3] In 26-108, Deckers dismissed the sole remaining defendant voluntarily on February 2, 2026 (Dkt 13). In 26-157, it was also February 2, 2026 (Dkt 12). In 26-268 it was on January 27, 2026 (Dkt 12). Finally, Deckers closed out the 26-381 case by filing the voluntary dismissal on February 10, 2026 (Dkt 10).

[4] Deckers marked each of the subsequently filings as "original proceedings" despite every defendant having been previously sued on identical claims and dismissed out of the earlier actions.

(Harjani, J.) (Dkt 13) (Jan. 28, 2026) (same); *Deckers Outdoor Corp. v. bei duo*, No. 26-cv-381 (Cummings, J.) (Dkt 11) (Feb. 12, 2026) (same).

If there is any doubt that this scheme went largely unnoticed, in at least two of Deckers' schemes, the original filing was reassigned to the same judge twice before Deckers stopped "shopping." *See CHART OF DECKERS' JUDGE SHOPPING IN "TASMAN" CASES* (attached as Ex A) (hereafter referred to as "Deckers Judge Shopping Chart") (showing that cases in the "AKEANH6X696JN Scheme" were twice assigned to Judge Jenkins[5] – and cases in the "Birene Scheme" were twice assigned to Judge Haranji). Deckers stayed with its first-assigned judge in only two out of eleven filing groups. *See* Deckers Judge Shopping Chart (Ex A). Twice, Deckers changed judges six times (AKEANH6X696JN and Birene schemes) and twice it changed judges five times (this case, aka the bei duo scheme, and the Clpp'Li Scheme).

WHEN DECKERS FINISHED JUDGE SHOPPING

Having cleared the dockets of the four previously-filed, identical cases, Deckers finally and aggressively moved forward in this case. Deckers has tried to move as quickly and stealthily as possible not only to put as much distance between this case and the previously-filed "pinched" cases but also to grab as much money as possible from foreign defendants on a claimed trade dress that the United States District Court for the Northern District of California has already found to be "generic" and thus wholly unprotectable. *Compare Deckers Outdoor Corp. v. Last Brand, Inc.* No. 23-cv-04850, 2025 U.S. Dist. Lexis 195922 at \*13 (N.D. Cal. Oct. 2, 2025) (granting summary judgment against Deckers and finding that two of its claimed trade dresses – *including for the TASMAN product at issue here* – were generic and unworthy of protection) *with* Compl. ¶ 17

---

[5] The 25-cv-15234 case before Judge Jenkins was pinched down to a single defendant, "Lovely beautiful childrens shoes," who was voluntarily dismissed out of that case on December 29, 2025. The case is closed. It is not clear whether any of the defendants in the "AKEANH6X696JN Scheme" have been sued again.

4

(alleging that the TASMAN trade dress is "unique and inherently distinctive.") For "infringement" of this generic trade dress, Deckers has sought (and now obtained) a judgment for nearly $4 million dollars in Comwarm's sales of its own competing product.[6]

## PROCEDURAL HISTORY OF THIS CASE

As noted above, Deckers filed its complaint on the generic TASMAN trade dress in *this* case on January 16, 2026 (Dkt 1). It then moved for leave to serve the defendants by email and bypass the requirements of the Hague Convention on January 27, 2026 (Dkt 9, 10). The next day, this Court granted Deckers leave to bypass the Hague Convention and serve defendants by email. (Dkt 12).

Deckers purported to serve Comwarm on February 24, 2026, by sending an email to qingleiamazon@sina.com. By the time this email was sent, Comwarm, along with its 70 co-defendants had been sued, "amended" out of the complaint, "terminated" from those cases, and sued again in a process that repeated itself four times.

The clerk set the date by which Comwarm was to answer or otherwise plead as March 17, 2026 (Dkt 15). February 24, 2026, to March 3, 2026, included the final portion of the Lunar New Year holiday in China. *See, e.g.,* Declaration (April 1, 2026) of Chunping "Tin" Huang at ¶ 2 (attached as Ex ). By March 17, 2027, Comwarm had been searching for counsel because litigation attorneys at the firm that had previously represented Comwarm had left to join a different firm. *Id.* at ¶ 3. Comwarm forwarded the filings in this case to prior counsel and believed that counsel was

---

[6] Deckers and its counsel failed to inform the Court anywhere in its complaint or any subsequent filing that its claimed trade dress had been deemed generic and unenforceable on summary judgment in another court. Product trade dresses are not "inherently distinctive." *See Wal-Mart Stores, Inc.,* 529 U.S. at 216 ("[A] product's design is distinctive . . . *only* upon a showing of secondary meaning." (emphasis added). Because Deckers' claimed trade dress is not registered, there is no reporting requirement to the USPTO to reflect that the claimed TASMAN trade dress is unregistrable and unprotectable because it is generic.

5

handling these matters for Comwarm but eventually learned that they were not. When it became apparent that prior counsel was not responding, Comwarm searched for and quickly retained other counsel. *Id.* ¶ 5. By the time a responsive pleading was due, however, new counsel had not yet been retained. A week after the designated date to respond (no extensions of time had been requested or granted), on March 24, 2026, Comwarm retained counsel in this case. *Id.*

Less than a week after Comwarm was due to answer or otherwise plead in response to the complaint, Deckers' moved for entry of default and default judgment. (Dkt 18, 19). Two days after Deckers filed its motion for default judgment, counsel appeared on behalf of defendant Comwarm (Dkt 27). Namely, late in the afternoon on March 26, 2026, Comwarm appeared through counsel and moved the Court to set a briefing schedule on Deckers' motion for entry of default. (Dkt 28). At that time, Comwarm was unaware that this Court had earlier that day entered judgment because: (1) counsel was not yet an ECF notice recipient; and (2) notice of the entry of default judgment was received in China well after the close of business at 10:37 p.m. local time.[7]

For the reasons more fully set forth below, this Court should vacate its default judgment order, dismiss this case with prejudice, and impose sanctions on Deckers and its counsel for vexatious litigation conduct. In the alternative, it should grant Comwarm leave to answer or otherwise plead in response to Deckers' complaint on or before April 16, 2026. The facts as set forth above, and the law set forth below, strongly suggest that dismissal with prejudice and sanctions is the more appropriate of these two alternatives.

---

[7] When Comwarm processed that notice of this Court's order on Friday morning local time in China, it was already after 9:00 p.m. in Chicago and counsel had already filed an appearance and requested a briefing schedule.

6

## ARGUMENT

Rule 55(c) of the Federal Rules of Civil Procedures states that a "court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). Rule 60(b) in turn states that a default judgment can be vacated if a party shows "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). Courts may also vacate judgments obtained by "(3) fraud . . . misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). "To have a default judgment vacated, the moving party must demonstrate: (1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint." *Id.* (cleaned up). It is a well-established policy to favor "trial on the merits over default judgment." *Cracco v. Vitran Exp.*, 559 F.3d 625, 631 (7th Cir. 2009). Defendant Comwarm satisfies each of these criteria.

## I. Judgment Should Be Vacated On Grounds Of Surprise. Comwarm was Surprised By The Quick Entry Of Default And Default Judgment

Rule 60(1) permits vacatur based on, among other things, "surprise." *See* Fed. R. Civ. P. 60(1). Comwarm had previously retained counsel to defend similar Schedule A cases. Due to departures at the firm representing it in various matters, there was confusion as to whether this matter was being appropriately handled. When Comwarm retained new counsel, Deckers' motion for default had just been filed. *Compare* Huang Decl. ¶ 5 (counsel retained on March 24, 2026) *with* Deckers' Motion for Default (Dkt 18) (March 23, 2026).

Additionally, even after retaining new counsel, this Court's entry of default happened surprisingly quickly after it was filed. Although this Court does not require presentment of motions, there was a pending status hearing set for Monday, March 30, 2026 (Dkt 12), and this

7

Court had already granted another late-filing defendant leave to respond or otherwise plead.[8] It would not have been unreasonable – but was in hindsight wrong – to infer that Deckers motion would be discussed, presented, or heard in the Court's previously-set status hearing. Comwarm was surprised to learn that while working on an opposition to Deckers' motion, this Court had already granted it two days after its filing.

## II.   Comwarm has "Good Cause" for Setting Aside the Default Judgment

Good cause for setting aside a default judgment can include "excusable neglect," which encompasses "both simple, faultless omissions to act and, more commonly, omissions caused by carelessness." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'hip*, 507 U.S. 380, 388 (1993). In Pioneer, the Supreme Court stated that the inquiry is:

> at bottom an *equitable* one, taking account of *all the relevant circumstances* surrounding the party's omission. These include . . . the danger of prejudice to the [defendant], the length of the delay and its potential impact on judicial proceedings, the reasons for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id.* at 395.

Although Comwarm should have acted more quickly to respond, it did not intend to default and in fact was in the process of retaining counsel to defend it in this action, which was the *fifth* time that Deckers has sued Comwarm on the exact same claims and after having been four times dismissed from lawsuits on the exact same claims. When this Court entered Default Judgment, Comwarm was in the process of preparing an opposition to Deckers' motion and request additional time to answer or otherwise plead. A Chinese company unfamiliar with *normal* civil litigation practice would have good reason to be confused about the situation. This vexatious

---

[8] One of Comwarm's co-defendants, instead of responding to the motion for entry of default and default judgment, moved for leave to answer or otherwise plead. *See ITAJIA's* Motion (Dkt. 24). This Court granted the motion, tacitly excusing the untimeliness under Rule 6. *See* Dkt. 15.

scheme to deceive the judges of this Court and the parties—and the chaos of being sued, dropped, and repeatedly sued again—makes this case *abnormal* in a manner that deeply affects the equities. Any neglect on this accelerated timeline would certainly be excusable.

Finally, Deckers would not be unfairly prejudiced insofar as no activity has taken place on the merits, its motion for default would have been filed in any case because of the other non-appearing defendants and Deckers will still have to prosecute this suit against at least one of Comwarm's co-defendants, who this Court permitted to answer or otherwise plead despite also being untimely. As a result, Comwarm's efforts to oppose the motion for entry of default and default judgment, particularly in light of Deckers' chaotic and vexatious "pinching" scheme, meet the standards for "good cause" and "excusable neglect."

### A. Comwarm Took Quick Action to Vacate the Default

This motion follows just days after this Court entered default and default judgment. Delays of several weeks between the entry of default and a motion have been still considered quick enough under the "quick action" standard. *Delgado v. I.C. System*, No. 17-cv-04918, 2020 U.S. Dist. LEXIS 161367, at *6 (N.D. Ill. Sep. 3, 2020). Comwarm is unaware of any case in which a delay of just a handful of days has failed to satisfy the "quick action" standard. Indeed, the time between the technical default date (March 17, 2026) and this Court's default judgment order (March 26, 2026) is far shorter than nearly all courts permit measuring the time between default and motion to vacate.

### B. Comwarm Has Numerous Meritorious Defenses

To satisfy the "meritorious defense" standard, a defense "does not need to be a clearly victorious argument, but it must contain more than bare legal conclusions." *Delgado v. I.C.*

9

*System*, No. 17-cv-04918, 2020 U.S. Dist. LEXIS 161367 (N.D. Ill. Sep. 3, 2020) (quoting *Acosta*

*v. DT & C Glob. Mgmt., LLC*, 874 F.3d 557, 561-62 (7th Cir. 2017) (cleaned up).

Here, Comwarm has several strong defenses to Deckers' claims including procedural and

substantive defenses. Procedurally:

- This Court lacks personal jurisdiction over Comwarm because service of process was faulty and in violation of the Hague Convention;

and even if jurisdiction were proper,

- Deckers has previously sued and voluntarily dismissed Comwarm from the same Lanham Act trade dress infringement case on four separate occasions. Under Rule 41, the *second* voluntary dismissal acts as a dismissal with prejudice and Deckers' claims are barred by *res judicata*.

- Deckers procured this judgment through egregious litigation misconduct – namely as part of its judge-shopping scheme.

Substantively Deckers' claims fail for at least three reasons:

- The claimed TASMAN trade dress is generic and at least one other Court has already entered summary judgment against Deckers on exactly that issue;

- The claimed TASMAN trade dress lacks secondary meaning and therefore cannot function as a source-identifying trade dress; and

- The claimed TASMAN trade dress is legally functional under the doctrines of utilitarian and/or aesthetic functionality and therefore are not a protectable trade dress.[9]

### 1. This Court Lacks Jurisdiction over Comwarm

A judgment is void when a court lacks personal jurisdiction over the defendant at the time

the judgment was entered. *See Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456

U.S. 694, 701 (1982). A court lacks personal jurisdiction in the absence of proper service of

process. Critically, relief under Rule 60(b)(4) is not discretionary. When a judgment is void, the

district court is required to grant the motion. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S.

---

[9] It is also unlikely that Deckers could ever establish a likelihood of confusion as required under Section 43(a) of the Lanham Act, but this motion focuses on only the three defenses noted above.

260, 270-71 (2010); *Philos Techs. v. Philos & D*, 645 F.3d 851, 855 (7th Cir. 2011) (judgment void for lack of personal jurisdiction must be vacated under Rule 60(b)(4)).

### a. The Hague Service Convention Applies and Is Mandatory.

The Hague Service Convention "applies in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." Hague Service Convention, Art. 1.[10] The Supreme Court has held that when the Hague Convention applies, compliance is mandatory. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988). This action requires transmitting service documents to China – a contracting State – making the Convention applicable.

Both the United States and the People's Republic of China, where Comwarm resides, are contracting parties to the Convention. China acceded to the Convention on July 3, 1991, with effect from May 1, 1992. Under Article 2 of the Convention, China designated the Ministry of Justice of the People's Republic of China as its Central Authority to receive and process service requests from foreign courts and parties. *See, Smart Study v. Shenzhenshixindajixieyouxiangongsi*, 164 F.4th 164, 166-67 (2d Cir. Dec. 18, 2025). Service on a Chinese corporate defendant like Comwarm must therefore proceed through the Central Authority – or through another channel specifically authorized by the Convention and not objected to by China – before any default can be entered. *Id.*

### b. China Has Objected to Alternative Service Channels, Including Email Service

Article 10 of the Convention permits certain alternative methods of service such as postal channels and direct service through judicial officers only in contracting states that do not object. *Smart Study,* 164 F. 4th at 166-67 *at* 170 (citing Declarations of the People's Republic of China,

---

[10] Full text of the convention is available, among other places, here https://perma.cc/XC9X-XCVG (last visited March 31, 2025).

11

https://perma.cc/UMT5-V35D) (last visited March 31, 2026). China has expressly objected to all Article 10 alternative service methods. *See* Hague Conference on Private International Law, Status Table, Convention of 15 November 1965, Declarations/Reservations of the People's Republic of China (available at https://perma.cc/TEF5-RF9Q) (last visited March 31, 2026) As a result, no alternative service channel under Article 10 is available for defendants like Comwarm, who are located in China.

Email service is not mentioned in the Convention. It is not an authorized alternative. The Second Circuit recently held that email service on a Chinese defendant does not constitute proper service under the Hague Convention and is preempted as an alternative method of service. *See Smart Study*, 164 F.4th at 174. In *Smart Study*, the court emphasized that because China objected to Article 10 alternative service channels, there is no basis – regardless of convenience or practicality – to substitute email for the Convention's prescribed Central Authority procedures. *Id.* at 174. Courts in this Circuit and elsewhere have reached the same conclusion. *See, e.g., Luxottica Grp. S.p.A. v. P'ships & Unincorporated Ass'ns*, 391 F. Supp. 3d 816, 820-21 (N.D. Ill. 2019)[11] (Hague Convention procedures mandatory for service on Chinese defendants);[12] *see also Noco Co. v. Chang*, No. 1:20-cv-2437, 2021 WL 1192212, at *3 (N.D. Ohio Mar. 30, 2021) (rejecting email service on Chinese defendant with known address as inconsistent with Hague Convention

---

[11] While some courts – even in this district – have ignored the Hague Convention, the trend appears to apply the correct interpretation of international law.

[12] This issue is currently on appeal to the Seventh Circuit in *Kangol LLC v. Hangzhou Chuanyue Silk Import*, No. 25-2205 (7th Cir.). The Court heard oral argument on last month on February 25, 2026. *Id.* (Dkt. No. 29).

12

obligations); *Madu, Edozie & Madu v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 115 (S.D.N.Y. 2010) (email service improper where Hague Convention applies).

Plaintiff's service of a company organized under the laws of the People's Republic of China, by email violated the Hague Convention and cannot constitute proper service under Rule 4. Deckers' motion relied on counsel's unsupported statement that any such address was "unlikely to be legitimate." *See* Decl. Justin Gaudio in Supp. of Motion for Email Service (Dkt 11) ¶ 2. But even if that is true it is irrelevant. As the Second Circuit noted in *Smart Study*, "[e]ven if it is highly likely that service *via* the Hague Service Convention would be unsuccessful, compliance with the Convention is mandatory in all cases to which it applies." 164 F.4th at 172 (citing *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988). Because Deckers failed to comply with the requirements of the Hague Convention and made no effort to show why it should be disregarded, this Court never obtained personal jurisdiction over Comwarm and all actions taken against it were procedurally improper and constitutionally deficient.

2. Rule 41 Bars Deckers' Claims

Because the case against Comwarm has been brought and dismissed multiple times before, Rule 41 and *res judicata* bar its claims. *See Lavela v. Gilbert,* No. 24-2582, 2025 U.S. App. LEXIS 5768, at *6 (7th Cir. Mar. 12, 2025) ("at that moment Lavela's second case ended, so any further orders by the district court were without effect"). Deckers' "pinching" scheme itself bestows this unassailable merits defense for its victims. Its prior dismissals of Comwarm bar the current lawsuit.

Rule 41 of the Federal Rules of Civil Procedure states that "if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits." *See* Fed. R. Civ. P. 41(a)(1)(B). An amended complaint entirely supersedes and takes the place of an original complaint. *See, e.g., Clark v. Tarrant Cnty.*, 798 F.2d 736, 740 (5th Cir. 1986). "[D]istrict courts in Illinois have treated

13

dropping a defendant from an amended complaint as a voluntary dismissal pursuant to Rule 41." *See Widmar v. Sun Chemical Corp.,* No. 11 C 1818, 2012 U.S. Dist. LEXIS 55414, at *9 (N.D. Ill. Apr. 19, 2012) (citing C*ook v. Starling,* 104 F.R.D. 468, 469 (D.C. Ill. 1985)); *see also Paragon Sales & Services v. Onyx Arms International,* No. 93 C 4039, 1997 U.S. Dist. LEXIS 2315, at *12 (N.D. Ill. Feb. 25, 1997) ("When a plaintiff files an amended complaint dropping claims against a defendant, the amendment operates as a voluntary dismissal of that defendant"). Voluntary dismissal, even without prejudice, acts as a final order. *See, e.g., Waetzig v. Halliburton Energy Services, Inc.,* 145 S. Ct. 690, 696-97 (2025).

Deckers sued and voluntarily dismissed Comwarm from four prior, identical, lawsuits. *Deckers Outdoor Corp. v. bei duo,* No. 26-cv-00108 (Gottschall, J.) (Dkt 1) (Complaint attached as Ex H) and (Dkt 8 amended complaint dropping, *inter alia,* Comwarm); *Deckers Outdoor Corp. v. bei duo,* No. 26-cv-00157 (Ellis, J.) (Dkt 1) (attached as Ex I) (same) and (Dkt 9) (amending and dropping Comwarm) ; *Deckers Outdoor Corp. v. bei duo,* No. 26-cv-00268 (Harjani, J.) (Dkt 1) (attached as Ex J) and (Dkt 9) (amending and dropping Comwarm); *Deckers Outdoor Corp. v. bei duo,* No. 26-cv-381 (Cummings, J.) (Dkt 1) (attached as Ex K) and (Dkt 8) (amending and dropping Comwarm). Each of these complaints is a two-count complaint for supposed infringement of the claimed "TASMAN" trade dress under the Lanham Act and Illiniois law. *Id.*

Deckers and its attorneys misled about these four prior complaints and amendments, which serially dropped every single defendant named in this case, amendments that acted as prior voluntary dismissals. Although Deckers marked its civil cover sheets as "related" to the previously-filed suits, it also marked them as "original" rather than reinstated, concealing the fact that identical claims had been brought and voluntarily dismissed previously. Because Comwarm has been amended out of and thus voluntarily dismissed from Deckers' previous lawsuits four times, the second of those dismissals (in the 26-cv-157 case then pending before Judge Ellis) acted as an

14

adjudication on the merits. *See* Fed. R. Civ. P. 41(a)(1)(B).[13] This prior adjudication on the merits acts as *res judicata* here, *Lavela,* 2025 U.S. App. LEXIS 5768, at *6, which is a meritorious defense supporting *vacatur.*

The Seventh Circuit's decision in *Taylor v Brown* does not compel a different result. *See* 787 F.3d 851, (7th Cir. 2015) (holding that the language of Rule 41(a)(2) speaks in terms of dismissing an "action" and a that "misjoined claims" should have be amended out under Rule 15) (citing *Berthhold Types Ltd. V. Adobe Sys.,* 242 F. 3d 772, 777 (2001). There are at least two reasons that the rule of *Taylor* and *Berthold* does not apply here.

First, courts have interpreted the language of Rule 41 to find that when all claims against a party are dropped, the "action" as to that defendant is dismissed. *See. e.g., Meinders, D.C. v. United Healthcare Servs.,* No. 20-cv-2832, 2021 WL 3234918 (7th Cir. Jul. 30, 2021) (noting that when "all Meinders's claims against [a defendant] dropped out of the lawsuit" rule 41(a)(1) would apply); *see also Pedrina v. Chun,* 987 F.2d 608, 609 (9th Cir. 1993) ("The question presented by this appeal is whether Rule 41(a)(1) allows a plaintiff to dismiss without a court order fewer than all of the named defendants, or whether the Rule is limited to dismissals of the plaintiff's entire case ... . We agree with the First, Third, Fifth, and Eighth Circuits that Rule 41(a)(1) allows a plaintiff to dismiss without a court order any defendant who has yet to serve an answer or a motion for summary judgment.").

Second, if even if "action" means the entire case as filed – including parties *and* claims – Deckers' pinching/judge-shopping scheme still meets that definition. Deckers' scheme just

---

[13] Dismissal of the third (before Judge Harjani) and fourth (before Judge Cummings) should have also acted as an adjudication on the merits but that may be the litigation equivalent of beating a dead horse.

implements that dismissal in two parts – the first part typically dismisses out 99%[14] of all defendants and the second part dismisses out the remaining lone defendant, without taking any affirmative prosecutorial action in the case. This inaction and quick dismissal deprives the later-filed court of any ability to transfer back to the originally-assigned judge. This is shown in the chart collecting the numerous pinching/judge-shopping schemes that Deckers has implemented just as related to cases claiming trade dress rights in the TASMAN suede slipper. *See* Deckers Judge Shopping Chart (Ex A). Therefore, Deckers' scheme which keeps a sole defendant in an earlier-filed case only to drop it days or weeks later is still the equivalent of the voluntary dismissal of an "action" under *Taylor.*

      3.   Deckers Lacks Trade Dress Rights in the Claimed TASMAN Trade Dress

Beyond the service defect and *res judicata* issues, COMWARM has substantial defenses to the merits that independently warrant *vacatur*. It is the longstanding policy in this Circuit that favors "trial on the merits over default judgment." *Cracco v. Vitran Express,* 559 F.3d at 631(citing *Yong-Qian Sun v. Board of Trustees,* 473 F.3d 799, 811 (7th Cir. 2007) *C.K.S. Eng'rs, Inc. v. White Mountain Gypsum Co.,* 726 F.2d 1202, 1205 (7th Cir. 1984) (collecting cases)). In cases other than those involving void judgment, a Court should vacate a default when "(1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint." *Id.* (cleaned up) *Milwaukee Electric Tool Corp. v. Individuals, Corps., Ltd. Liability Cos., P'ships, & Unincorporated Associations Identified on Schedule "A",* No. 24 C 12487, 2025 U.S. Dist. LEXIS 216016, at *5 (N.D. Ill. Nov. 3, 2025) (*citing Cracco,* 559 F.3d at 631. To demonstrate a meritorious defense for Rule 60(b) purposes, a defendant need only put forth facts that, if proven,

---

[14] Deckers here dismissed out $98.\overline{666}$% of all defendants here in its first pinch (74 of 75), $98.6\overline{486}$% (73 of 74) in the second, 98.63% (72 of 73) in the third, $98.6\overline{11}$% (71 of 72) in the final judge-shopping pinch.

would constitute a cognizable defense. *Pretzel & Stouffer*, 28 F.3d at 46. Comwarm satisfies this standard.

> a. *Deckers' Claimed Trade Dress Is Generic and Unprotectable.*

Trade dress protection extends only to product features that identify the source of a product, not to features that consumers understand as referring to a general category of goods. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). The overall appearance of the UGG TASMAN slipper which Deckers describes as embodying a trade dress describes literally hundreds of slippers for sale just in the United States.

Deckers claims it has rights to exclude others from making footwear that includes:

- o An embroidered braid around the opening of the upper;
- o A raised prominent seam on the front part of the upper running longitudinally down the center of the upper;
- o A raised and rounded dome shaped toe;
- o A brushed suede-like exterior; and
- o A thick, platform outsole.

Complaint at ¶ 17, pages 5-6 (Dkt 1).

Deckers' supposed trade dress describes a broad category of footwear that has been produced by hundreds of manufacturers. These features and appearance are generic and commonly used in the suede-and-sheepskin slipper market, not distinctive indicators of any single source. This situation here – with this particular style of footwear and the plethora of competitive alternatives – is the exact same as that facing the Northern District of California which found the same TASMAN design to be generic and therefore unenforceable because of, *inter alia*, the myriad of similar-looking alternatives. *See Deckers Outdoor v. Last Brand, Inc..*, No. 23-cv-04850-AMO, 2025 U.S. Dist. LEXIS 195922 (N.D. Cal. 2025) (granting summary judgment on genericness defense). There, the court found that the claimed trade dress for Deckers' TASMAN

17

suede slipper (the same trade dress that Deckers bases its entire lawsuit on here) was generic and thus unprotectable. *Id.*

Where claimed trade dress consists of elements that are generic to the product category, the trade dress is not protectable regardless of commercial success or advertising. *See, e.g., Two Pesos,* 505 U.S. at 768. Just as in the *Last Brand* case, evidence here — including third-party product offerings, industry practice, and consumer perception — will establish that the TASMAN design elements are generic across the suede shearling casual footwear category and cannot serve as protectable trade dress. *Last Brand, Inc..,* 2025 U.S. Dist. LEXIS 195922 at *13 (entering summary judgment against Deckers on the issue of genericness for the TASMAN design).

b. *Deckers' Claimed Trade Dress in the TASMAN Slipper Has not Attained Secondary Meaning.*

Comwarm would also prevail on its defense that the claimed TASMAN trade dress is not source identifying – *i.e.,* has not attained "secondary meaning." "[I]n an action for infringement of unregistered trade dress under 43(a) of the Lanham Act, a product's design is distinctive, and therefore protectable, only upon a showing of secondary meaning." *Wal-Mart Stores v. Samara Brothers,* 529 U.S. 205, 216 (2000). "Secondary meaning is established when a plaintiff, by use of its trade [dress] . . ., achieves in that [trade dress], a special significance to the public such that a substantial number of present or prospective customers understand [the trade dress] as referring to the person who holds the mark." *Roulo v. Russ Berrie & Co.,* 1986 U.S. Dist. LEXIS 26859 (N.D. Ill. April 14, 1986), *aff'd,* 886 F.2d 931 (7th Cir. 1989).

It is plaintiff's burden to show secondary meaning since its claimed trade dress is not registered. *E.g., Toyo Tire & Rubber Co. v. Atturo Tire Corp.,* No. 14-cv-00206, 2019 U.S. Dist. LEXIS 219398, at *4 (N.D. Ill. Dec. 20, 2019) Secondary meaning must be established either through survey evidence or "length and manner of use, amount and manner of advertising, volume

18

of sales, place in the market, and evidence of intentional copying." 2 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 15.30 (4th ed. 1999). *HiSpec Wheel & Tire v. Tredit Tire & Wheel*, 2007 U.S. Dist. LEXIS 1870, *13 (N.D. Ind. Jan. 8, 2007). Secondary meaning requires that consumers know that the product comes from a single source.

As noted above regarding genericness, it is highly unlikely that Deckers could show that any suede upper, thick-soled suede shearling lined slipper, constructed with a seam on a rounded toe box would necessarily originate from a single source. Indeed, the plethora of alternatives in nearly the same design strongly suggest otherwise. *See, e.g., Eldon Industries v. Rubbermaid, Inc.,* 735 F. Supp. 786, 834 (N.D. Ill. 1990) (third party use negates the "exclusive use" factor for finding secondary meaning); *see also Easy Spirit, LLC v. Skechers U.S.A., Inc.*, 515 F. Supp. 3d 47, 67 (S.D.N.Y. 2021) (extensive third-party use in trade dress shoe design case tended to negate secondary meaning claim). Also, there is at least some anecdotal evidence that slippers of this type do not originate from a single source but instead from a variety of different sources. *See, e.g.,* Gaston Korub, *Not Getting Duped* (March 24, 2026) (available at https://perma.cc/CME2-6TVG) (last visited March 31, 2026) (wherein the author asked his students "whether anyone would buy the Quince product thinking that it was an UGG product, the response was *unanimous as well that no right-thinking person would.*") (emphasis added).

Deckers has made little to no effort to satisfy its burden of showing secondary meaning, which it must since its claimed trade dress is not registered. *See, e.g., Tone Brothers v. Sysco,* 28 F.3d 1192 (Fed. Cir. 1994). In its complaint, it claims without any specifics that its design is "inherently distinctive." Compl. ¶ 17. Among the many problems with this claim is that "an unregistered product trade dress *cannot be* inherently distinctive . . .." *National Presto Industries v. United States Merchants Financial Group*, No. 18-cv-03321 (SRN/BRT), 2021 U.S. Dist. LEXIS 114054, at *29 (D. Minn. June 18, 2021) (*citing Wal-Mart Stores, Inc.*, 529 U.S. at 216 ("[A]

product's design is distinctive . . . only upon a showing of secondary meaning."); *see also id.* ("given the *unlikelihood* of inherently source-identifying design, the game of allowing suit based upon alleged inherent distinctiveness seems to us not worth the candle."). The claim that it is "unique" in the industry, *see* Compl. ¶ 22, is belied by the number of defendants it has sued not only in this case but in numerous others. Given the numerous other similar looking platform suede slippers available in the sheepskin casual footwear market, even if Deckers design wasn't deemed generic, it would be incapable of showing secondary meaning. Its claim to exclusive use is dubious to say the least.

Beyond this, other allegations attempting to show secondary meaning are lacking and often facially suspect. For example, Deckers alleges that Oprah Winfrey featured UGG boots on her "favorite things" show and proclaimed that she "LOOOOOOOVES [sic] her UGG boots." *See* Compl. ¶ 7. But what Deckers glosses over is that Oprah said that 26 years ago about a product that is not at issue in this case. Indeed, Deckers admits it first started selling the product at issue here more than 20 years *after* Oprah talked about a completely different product. Whatever Oprah said more than a quarter century ago about a different product has no bearing on whether its currently-claimed trade dress has secondary meaning.

Deckers' reference to advertising for products unrelated to the one at issue here and to promoting the UGG name rather than the claimed trade dress here fares no better. *See. e.g.,* Compl. ¶¶ 20-22. The USPTO rejected similar evidence when Deckers tried unsuccessfully to register their UGG boots. *See* Final Office Action Rejecting U.S. TRADEMARK APPLICATION NO. 87310138 – 122688 (Dec. 22, 2017) (available at https://bit.ly/419LISu) (hereafter "Final Rejection") (last visited March 31, 2026). There, the USPTO rejected Deckers' application to register its UGG boot (design shown below), which claimed to be distinctive, *inter alia*, based on an "exaggerated stitch pattern," Final Rejection at 12, stating that "[Deckers']

20

advertising and third-party materials show consumer recognition of the word mark "UGG" but these are not probative of whether consumers associate the specific design elements claimed as features of the proposed mark with a single source." *Id.* at 6-7.[15]

### c. Deckers' Claimed Trade Dress Is Functional and Therefore Unprotectable

Trade dress is functional — and therefore categorically ineligible for Lanham Act protection — if it is "essential to the use or purpose of the article or if it affects the cost or quality of the article." *Qualitex Co. v. Jacobson Prods. Co.,* 514 U.S. 159, 165 (1995) (quoting *Inwood Labs. v. Ives Labs.,* 456 U.S. 844, 850 n.10 (1982)); *see also TrafFix Devices, v. Marketing Displays,* 532 U.S. 23, 33 (2001). The features Deckers identifies as its trade dress are precisely the functional characteristics that define what a slipper is and make it comfortable, warm, wearable, and easy to construct.

The case of *Deckers Outdoor Corp. v. It's Friday, Inc.* from the Southern District of New York – despite involving a completely different Deckers' product – is nevertheless instructive. *See* No. 20-CV-10602 (VSB) (BCM), 2024 WL 5481211, at *6 (S.D.N.Y. Oct. 31, 2024), *report and recommendation adopted,* No. 20-CV-10602 (VSB) (BCM), 2025 WL 886882 (S.D.N.Y. Mar. 21, 2025). There, even after default, the magistrate judge examined Deckers' trade dress pleading and found it legally insufficient, describing a "laundry list" of features "with no explanation" of distinctiveness and identifying elements that were "quite obviously functional in the traditional sense." *Id.* The court recommended dismissal of the trade dress claims despite the absence of opposition. *Id.* While an entirely different product is at issue here, Deckers has done the same thing

---

[15] The design that Oprah declared one of her "favorite things" appears to be the same design that the USPTO rejected for registration as a protectable trade dress.

– namely, provided a "laundry list" of features without explanation of their distinctiveness or their lack of utilitarian or aesthetic functionality.

Permitting Deckers to monopolize the functional features of a suede slipper through trade dress law would give it an unfair competitive advantage — preventing competitors from making equally functional products — which is exactly the harm that the functionality doctrine is designed to prevent. *TrafFix*, 532 U.S. at 29. Comwarm would establish that the claimed trade dress elements are functional and thus unprotectable as a matter of law.

### III. The Judgment Against Comwarm Should Be Vacated Because Deckers Obtained it Through Egregious Litigation Misconduct

Judge shopping is sanctionable conduct. Deckers engaged in egregious judge shopping in this case through its "pinching" scheme. Deckers' judge shopping conduct is not limited to this case but is widespread. Judgment should be vacated and Deckers should be sanctioned for its vexatious litigation conduct – namely, its judge shopping scheme and its efforts to conceal that scheme from the Judges of this Court.

#### A. *Judge Shopping is Bad.*

It should go without saying, but judge shopping is bad. In *Bose Corp. v. Schedule A Defendants,* No. 19-cv-7467, 2019 WL 6210939 at *1 (N.D. Ill. Nov. 21, 2019), Judge Durkin noted that the problem is not simply the seeking and obtaining a judge perceived to be favorable, but the appearance of impropriety and even without intent, said the practice "must stop." *Id.;*[16] *see also Doe v. Schedule A Defendants,*[17] No. 20-cv-4099 (N.D. Ill. July 14, 2020) (Dkt 15) (Tharp, J.)

---

[16] The "appearance of impropriety" is important. Judge shopping is not an exact science. Coincidentally, Judge Durkin, who's harsh words are quoted above, appears to be one of Deckers' preferred judges for its cases. *See* Deckers Judge Shopping Chart (Ex A).

[17] Comwarm's citations here do not in all instances conform to the manipulative case-naming practices that Deckers and its attorneys have used. For simplicity, for these "Schedule A" cases, Comwarm uses the case name format: "*[Named Plaintiff] v. Schedule A Defendants.*"

(noting that creating an appearance of judge shopping even without a showing of intent "gives rise to concerns regarding forum shopping and undermines the integrity of the Court's random case assignment process) (attached as Ex. E).[18]

The Northern District is not unique. A district court in Utah stated that judge shopping should be subject to "universal condemnation." *U.S. v. Phillips*, 59 F. Supp. 2d 1178, 1180 (D. Utah 1999) and the Eleventh Circuit referred to the practice as a "threat to the orderly administration of justice." *In re Bellsouth,* 334 F.3d 941, 958 (11th Cir. 2003) (collecting and discussing other cases condemning the practice). Another judge in the District of Puerto Rico noted, judge shopping "disrupts the proper functioning of the judicial system and may be disciplined." *Vaqueria Tres Monjitas, Inc. v. Rivera Cubano*, 341 F. Supp. 2d 69 (D.P.R. 2004) (Casellas, J.) (citing *Standing Comm. On Discipline of the U.S. Dist. Ct. for the Cent. Dist. of Cal. v. Yagman, 55* F.3d 1430, 1443 (9th Cir. 1995)). These, "attempts to manipulate the random case assignment process are *subject to universal condemnation.*" *Phillips,* 59 F. Supp. 2d at 1180 (emphasis added) (*citing United States v. Conforte,* 457 F. Supp. 641, 652 (D. Nev. 1978), aff'd, 624 F.2d 869 (9th Cir. 1980)). Beyond the obvious issues of fairness, judge shopping also negatively implicates issues of judicial economy and resource allocation. *E.g., Oxbow Energy v. Koch Indus.,* 686 F. Supp. 278, 282 (D. Kan. 1988).

B. *Pinching is Judge Shopping.*

Pinching schemes like Deckers uses here and elsewhere are a version of judge shopping. *See* Fackrell, *Pinching and Pressing* at 64-65 (*citing inter alia Stiebritz v. Schedule A*, No. 1:25-cv-

---

[18] The *Doe* case before Judge Tharp involved "past-posting," which is when the Schedule A plaintiff withholds the "Schedule" until after the judge is assigned, making it more difficult, if not impossible to determine to which defendants Rule 41, and thus *res judicata*, applied. *See* Sarah Fackrell, *Defendant Pinching & Pressing*, , 104 Wash. U. L. Rev. __ (forthcoming 2027) (attached as Ex C) (hereafter "Fackrell, *Pinching and Pressing*") at 56 n.271, 77 (coining the phrase "past-posting" gaming law).

23

03459 (N.D. Ill. Apr. 9, 2025) (Dkt 19)) (*Stiebritz* order attached as Ex E) (Fackrell as Ex C).[19] In this form, pinching as judge shopping receives no less scorn than "traditional" judge shopping. Judge Tharp referred to pinching as "blatant forum shopping" and a "nefarious" practice in *Dongguan Deego Trading Co. v. Junyao-US*, No. 25 C 4962, 2025 WL 2174325 *2 (N.D. Ill. Jul. 31, 2025); *see also Marshall Amplification v. Xingrunshangmao*, No. 25-cv-13829 (Blakey, J.) (Dkt. 22) (Ex B) (referring to pinching scheme as "an egregious form of judge shopping.").

C. *Deckers' Egregious Litigation Misconduct Warrants Vacatur.*

Deckers and its counsel were engaged in egregious and widespread judge shopping in this case and others. Deckers failed to disclose that Comwarm and each of the remaining co-defendants had been sued on identical factual allegations and identical legal bases four times previously and had been dismissed voluntarily four times previously. Deckers, through its attorneys here, engaged in this active concealment of its judge-shopping scheme despite being explicitly admonished to stop its "egregious" judge-shopping and pinching practices. *See, infra.* at 26 (*citing* LAW360 article).

1. *Default Judgment Should be Vacated Because of Deckers' Egregious Litigation Misconduct.*

Deckers obtained its default judgment in this case (Dkt 26) through its pinching scheme, including active concealment of its repeated filings against and dismissals of Comwarm and the other co-defendants. Rule 60(b)(3) provides that this Court may relieve a party of final judgment for "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). Deckers obtained its judgment through fraud, misrepresentation, and misconduct – *i.e.*, though its rampant judge shopping and concealment of that scheme, including concealment of its multiple prior voluntary dismissals of Comwarm from

---

[19] "Pinching" refers to the filing of a lawsuit with multiple defendants (75 in this case) and if a judge is not perceived as advantageous, voluntarily dismissing 74 of them through an amended complaint, and re-filing against the 74 who were pinched off in a new suit in an identical new case.

24

identical lawsuits. This provides a basis for relief from judgment but also for sanctions, as more fully explained below.

2. *Courts Have Authority to Levy Sanctions under § 1927 and the Court's Inherent Authority.*

Courts have located the authority for such sanctions in 28 U.S.C. § 1927 and the Court's inherent authority to manage its docket and the parties that appear before it. *Dongguan Deego Trading,* 2025 WL 2174325 at *7-12. Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. It permits courts to award reasonable attorneys' fees and costs against any attorney who "multiplies the proceedings in any case unreasonably and vexatiously." *Id.*; *see also Kotsilieris v. Chalmers,* 966 F.2d 1181, 1184 (7th Cir. 1992) (the term "vexatious" in § 1927 means "either subjective or objective bad faith"). Such awards are appropriate when an attorney behaves in an "objectively unreasonable manner by engaging in a serious and studied disregard for the orderly process of justice." *Walter v. Fiorenzo,* 840 F.2d 427, 433 (7th Cir. 1988).

District courts have "certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Goodyear Tire & Rubber Co. v. Haeger,* 581 U.S. 101, 107 (2017) (cleaned up). That authority "includes the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* "A court may use its inherent authority to sanction those who show 'willful disobedience of a court order,' act in 'bad faith, vexatiously, wantonly, or for oppressive reasons,' for fraud on the court, delay, disruption, or 'hampering enforcement of a court's order.'" *Fuery v. City of Chicago,* 900 F.3d 450, 463 (7th Cir. 2018) (quoting *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44-45, (1991));

25

see also *Kapco Mfg. Co. v. C & O Enters., Inc.*, 886 F.2d 1485, 1491 (7th Cir. 1989) (sanctions are warranted when an attorney "pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound").

3. *There are A Range of Sanctions Appropriate for Plaintiffs Who Engage In Judge Shopping.*

Courts in this District have found that when judge shopping is suspected or found, there is a presumption that a dismissal sanction is proper, which presumption the plaintiff must rebut. *See, e.g., M OU v. Schedule A Defendants*, No. 25-cv-13203 (Nov. 25, 2025) (Kness, J.) (Dkt 15). With evidence to show pinching and judge shopping, both dismissal and an award of attorneys' fees associated with the pinching activity is warranted as a sanction. *See, e.g., Dongguan Deego Trading*, 2025 WL 2174325 at 5-6; *see also Marshall, supra.*

4. *Sanctions Are Necessary to Compensate for the Harm it has Caused and to Deter Deckers from Engaging in Judge Shopping in the Future.*

Without sanctions, Deckers' and Greer Burns' conduct will continue unabated. "Two purposes of sanctions pursuant to the inherent power are punishing a party's dishonesty and deterring others who might consider similar misconduct." *Xped LLC v. Entities Listed on Exhibit 1*, 690 F. Supp. 3d 831, 850 (N.D. Ill. 2023) (citing *Sanders v. Melvin,* 25 F.4th 475, 481-82 (7th Cir. 2022)) (cleaned up). Even when parties and their attorneys are chastised in public filings or in open court, unfortunately, many persist in their behavior. Surprisingly as explained below, such admonishments appear to have accelerated such misconduct in this and related cases. *Compare* Hailey Konnath, *'Egregious' Judge Shopping Sanctioned in Ill. TM Case*, (Law360) (attached as Ex D) (Jan. 16, 2026) (quoting Deckers' attorney here Amy Ziegler as stating "[w]e respect the court's decision.") *with* Deckers Judge Shopping Chart (Ex A). Any sanction should be substantial enough to deter Deckers and others who engage in this behavior from pursuing it again.

26

5. *Deckers Has Engaged in Judge Shopping Here and Has Used Judge-Shopping Schemes Pervasively in this District – Securing Tens of Millions of Dollars in Judgments from Defendants Whose Cases Should Have been Dismissed with Prejudice Had Deckers Not Concealed its Pinching Scheme.*

As shown above, Deckers is judge shopping. It is manipulating filings so it can eventually land on a judge that it believes will be more favorable and sympathetic to its claims, procedurally and substantively. Deckers filed the same claims on the same claimed trade dress against the same 75 (then 74, then 73, then 72, now 71) defendants in this case. This is bad enough on its own. There is no plausible, justifiable, non-"nefarious" (to borrow Judge Seegers term) explanation for its conduct.

Deckers' judge shopping, though, is not limited to just this one case (or series of pinched cases). Although tedious to track down, Deckers' judge-shopping practices seem to extend far beyond this case both as to Deckers as a party and as to its attorneys, Greer Burns who are jointly conducting the judge-shopping schemes, manipulating this Court's random judge selection process, concealing their scheme from the courts, and absconding with millions of dollars from defendants whose cases should have been dismissed under Rule 41(a)(1)(B) had the true facts been known.

In *Marshall Amplification, noted supra,* Judge Blakey called the exact same kind of pinching scheme that Deckers and Greer Burns used here a "willful abuse of the judicial process" and an "egregious form of forum shopping," which "consumes scare judicial resources." (Dkt No. 22) (attached as Ex B). Judge Blakey dismissed Marshall's action in its entirety with prejudice for Marshall and Greer Burns' attorney's extreme litigation misconduct. *Id.* What is perhaps more remarkable than the underlying judge-shopping scheme – which Greer Burns attorneys repeated here – is that Judge Blakey's ruling seems to have had no deterrence effect whatsoever. Two of five re-filings in this case occurred in this case *after* judge Blakey called out this egregious misconduct.

27

And two other judge-shopping schemes started and finished in their entirety after Judge Blakey's ruling.[20] In this case, it began before but continued after:

| Filing Date | Case No. | Trade Dress Asserted | Assigned Judge | No. of Defendants[21] | Deckers' Action | Pinch Amendment |
|---|---|---|---|---|---|---|
| 01-07-26 | 26-cv-108 | TASMAN | Gottschall | 75 | Amended to drop all but one defendant. | 01-07-26 |
| 01-07-26 | 26-cv-157 | TASMAN | Ellis | 74 | SAME | 01-08-26 |
| 01-09-26 | 26-cv-268 | TASMAN | Harjani | 73 | SAME | 01-12-26 |
| 01-12-26 | Judge Blakey sanctions Greer Burns's client in *Marshall* for judge shopping and abuse of process. | | | | | |
| 01-13-26 | 26-cv-381 | TASMAN | Cummings | 72 | SAME | 01-15-26 |
| 01-16-26 | 26-cv-540 | TASMAN | Kennelly | 71 | SAME | N/A |

Even the sanction of dismissal of a client's case and being called out in the public record for engaging in egregious litigation misconduct did not deter Greer Burns and its attorneys or Deckers from continuing its judge-shopping scheme.[22]

    6.  *Monetary Sanctions.*

In a just world, Deckers and its counsel would be sanctioned $4,787,945.69 in this case, which includes $3,887,672.75 to Comwarm – the total value of the judgment that Deckers and its counsel fraudulently obtained and attempted to take from Comwarm and its co-defendants. (Dkt 26 at 5-7). Comwarm, however, is mindful that any sanction must be compensatory in nature and designed to deter future misconduct and not punitive, and seeks far less.

Awarding all of Comwarm's attorneys fees and costs should be the minimum. Given its filing and its dismissal four previous times, this case should have never gotten to Judge Kennelly. The amount of fee will be dwarfed, though, by the amounts Deckers and Greer Burns would be

---

[20] In the wake of Judge Blakey's ruling, Greer Burns clients continued two rounds of judge shopping in this case, and executed the entirety of the Clpp'Li and Birene Schemes *after* counsel promised to "respect the court's decision." *See* Deckers Judge Shopping Chart (Ex A) (showing judge shopping activity after Judge Blakey's Jan. 12, 2026, ruling).

[21] The number of defendants listed before amendment include defendant Comwarm here.

[22] The extent of Deckers' judge-shopping scheme is not entirely known but appears massive. The Deckers Judge Shopping Chart analyzes only cases from this Court and only cases suing on the claimed TASMAN trade dress. Given Judge Blakey's ruling in the *Marshall* case for a completely different Greer Burns plaintiff, it is almost certainly the case that the practice is widespread.

able to collect if they remain undeterred. The Court should invoke its inherent authority and treble the award of attorney's fees as this motion vindicates public interest in the integrity of the court system, and triggers this Court's initial scrutiny of docket-multiplying judge-shopping conduct. Even setting aside the nearly $3.9 million judgment against Comwarm, Deckers stands to walk away with nearly a million-dollars in judgments against Comwarm's co-defendants despite its misconduct unless this Court invokes its inherent powers.

> 7. *The Court Should Also Impose Non-Monetary Sanctions for Deckers' Brazen Judge Shopping Schemes.*

It is clear based on past practice that merely dismissing this matter with prejudice is not a sufficient sanction to deter Deckers' and Greer Burns rampant abuse of judicial process and judge shopping schemes. The Court should dismiss this case with prejudice against Comwarm as a start. The Court must banish the notion that a nearly $4 million judgment could stand when obtained by such misconduct, *vacatur* and dismissal with prejudice being the minimum. While there may be further non-monetary sanctions appropriate to deter future misconduct, Comwarm is a single defendant and requests only that which makes it whole and prevents further harm to it.

## IV. Alternative Relief

Should the Court analyze the above-disclosed Deckers judge shopping and pinching scheme, Deckers' failure to serve Comwarm properly with service of process under the Hague Convention, and the implications of multiple prior voluntary dismissals, but nonetheless permit Deckers to go without sanction, it should at least permit Comwarm to defend itself on the merits from Deckers' demonstrably unmeritorious trade-dress claims.

## CONCLUSION

Deckers' and Greer Burns' judge-shopping schemes are brazen, widespread, nefarious, and an abuse of process. This misconduct is stacked on top of the thinnest of trade dress claims, which

29

appear rushed to avoid a genericness ruling and rely entirely on bewildered foreign defendants not showing up after exposure to Kafkaesque multiple-case dismissals and refilngs. Comwarm was admittedly neglectful to a limited extent, not responding to Deckers' complaint when it was due on March 17, 2026. But that neglect was minimal and excusable. Penalizing Comwarm with a nearly $4 million judgment for a response delay of just two weeks does not serve justice, especially given the confusion caused by Deckers' judge-shopping schemes, the misconduct of the scheme itself, and the numerous defenses on the merits, any one of which would extinguish Deckers' case against Comwarm.

Dated: March 31, 2026

Respectfully submitted,

*/s/ Michael La Porte*

**Michael R. La Porte**
**William W. Flachsbart**
Dunlap Bennett & Ludwig, PLLC
333 N. Michigan Avenue, Suite 2700
Chicago, IL 60601
Telephone: (312) 551-9500
mlaporte@dbllawyers.com
wflachsbart@dbllawyers.com

*Counsel for Comwarm*

30

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 31, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing via electronic mail to all counsel of record who have filed an appearance in this matter. The remaining parties I have served via electronic mail at the addresses listed below.

| Defendant/Seller Alias | Email Address |
|---|---|
| Comfortable home slippers | 1032839780@qq.com |
| B nice shoe | 1063458475@qq.com |
| litshoes | 1308465115@qq.com |
| crazy shoes LH | 13375818593@163.com |
| lijianl | 13530133965@139.com |
| Colorful Xus Boutique | 1360035951@qq.com |
| CBYY | 13600847013@163.com |
| hykzykxy | 13725686337@139.com |
| lxiaoyong | 13827800995@139.com |
| ███████ | ███████ |
| ███████ | |
| DUU Home Furnishing | 15606797880@163.com |
| KLKIT | 15815537162@163.com |
| Footwear Shop | 1585037694@qq.com |
| Jinyu Men Slippers | 1585037694@qq.com |
| GlamourSlippers | 15960147947@163.com |
| Freefoot Shoe | 16626709873@163.com |
| Coki | 17750601725@163.com |
| kuangzhil | 18024871520@139.com |
| AuraStride | 18119699870@163.com |
| bei duo | 18138982924@163.com |
| cai AA local | 18148749721@163.com |
| GANG YUE | 18350810316@163.com |
| A GlobeGem | 19139137107@163.com |
| LABADR | 19195589572@163.com |
| ApexEagle | 19539630704@163.com |
| Magic Flower | 20853204@qq.com |
| Mi Ju | 2170157767@qq.com |
| D S Ninetyninth Shop | 2510814210@qq.com |
| A Love yourself | 2515215066@qq.com |
| ERDAYE | 313336683@qq.com |
| Binggo fashion shoes | 314945593@qq.com |
| Home Cot Slippers a | 3167960969@qq.com |
| LYYShoes | 3364499043@qq.com |
| HAOHSHOP | 339610196@qq.com |
| guGood shopping in the province | 3532889625@qq.com |
| ███████ | ███████ |
| a Simple girl | 3965267344@qq.com |
| Huimo Slippers | 410713647@qq.com |
| DongQiaO | 45901904@qq.com |
| ChicNestBox | 494669581@qq.com |
| GH Ltd | 527354403@qq.com |

31

| | |
|---|---|
| GibaCat | 550008518@qq.com |
| Geryt | 572709386@qq.com |
| A clever rabbit | 649193831@qq.com |
| Han Te-US Trading Ltd. | 675375524@qq.com |
| Juan show shoes clothing | 710593427@qq.com |
| ■■■■■ | ■■■■■ |
| Li Dong Dong s best picks | 75260989@qq.com |
| chaopinkejiL | 85406530@qq.com |
| Butterflys love | 891550617@QQ.COM |
| MEISILING | 906411445@qq.com |
| M F Home textiles | 94490684@qq.com |
| Fashion Supplier | 990732158@qq.com |
| CLOUSPO Direct | clouspous@163.com |
| Bifang Home Living | cysm2024888@163.com |
| DFEff | df8oe871118@126.com |
| Djianx | djianx1988@163.com |
| Hot Hot Shoe Shop | dqwdqwdsqwdq@163.com |
| Briht | ftf57982707@163.com |
| abenbenzhu | imissyou010101@qq.com |
| Men Trend Slippers | Jackiesumaitong@163.com |
| Fashion Kitty | jej929dscm@163.com |
| ■■■■ | ■■■■ |
| ■■■■ | ■■■■ |
| HKTWOJS | XGJS011@163.com |
| HKTREKA | XGKX011@163.com |
| Cydmoty | younggajia@outlook.com |
| Gtlive | yy202312130933@163.com |
| BanQu Slippers | zengbolin1234@outlook.com |
| Earnesthope | zhuyingbao78@yeah.net |

_/s/ Michael R. La Porte_

Michael R. La Porte

32