IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DECKERS OUTDOOR CORPORATION, <br><br>            Plaintiff, <br><br>       v. <br><br> bei duo, et *al*, <br><br>            Defendants. | Case No. 26-cv-00540 <br><br> Judge Matthew Kennelly <br><br> Magistrate Judge Daniel P. McLaughlin |

AMENDED MEMORANDUM IN SUPPORT OF
AMENDED MOTION TO VACATE DEFAULT JUDGMENT

Deckers filed its complaint on the generic Tasman trade dress in this case on January 16, 2026 (Dkt 1). It then moved for leave to serve the defendants by email and bypass the requirements of the Hague Convention on January 27, 2026. (Dkt 9, 10). The next day, this Court granted Deckers leave to bypass the Hague Convention and serve defendants by email. (Dkt 12). Deckers purported to serve Comwarm on February 24, 2026, by sending an email to qingleiamazon@sina.com.

The clerk set the date by which Comwarm was to answer or otherwise plead as March 17, 2026 (Dkt 15). February 24, 2026, to March 3, 2026, included the final portion of the Lunar New Year holiday in China. *See, e.g.,* Declaration (April 1, 2026) of Chunping "Tin" Huang at ¶ 2 (attached as Ex G). By March 17, 2026, Comwarm had been searching for counsel because litigation attorneys at the firm that had previously represented Comwarm had left to join a different firm. *Id.* at ¶ 3. Comwarm forwarded the filings in this case to prior counsel and believed that counsel was handling these matters for Comwarm but eventually learned that they were not. When it became apparent that prior counsel was not responding, Comwarm searched for and quickly retained other counsel. *Id.* ¶ 5. By the time a responsive pleading was due, however, new counsel

1

had not yet been retained. A week after the designated date to respond (no extensions of time had been requested or granted), on March 24, 2026, Comwarm retained counsel in this case. *Id.*

Less than a week after Comwarm was due to answer or otherwise plead in response to the complaint, Deckers moved for entry of default and default judgment. (Dkt 18, 19). Two days after Deckers filed its motion for default judgment, counsel appeared on behalf of defendant Comwarm. (Dkt 27). Namely, late in the afternoon on March 26, 2026, Comwarm appeared through counsel and moved the Court to set a briefing schedule on Deckers' motion for entry of default. (Dkt 28). At that time, Comwarm was unaware that this Court had earlier that day entered judgment because: (1) counsel was not yet an ECF notice recipient; and (2) notice of the entry of default judgment was received in China well after the close of business at 10:37 p.m. local time.[1] For the reasons more fully set forth below, this Court should vacate its default judgment order.

ARGUMENT

Rule 55(c) of the Federal Rules of Civil Procedures states that a "court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). Rule 60(b) in turn states that a default judgment can be vacated if a party shows "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). Courts may also vacate judgments obtained by "(3) fraud . . . misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). "To have a default judgment vacated, the moving party must demonstrate: (1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint." *Wehrs v. Wells*, 688 F.3d 886, 890 (7th Cir. 2012) (cleaned up). It is a well-established policy to favor "trial on the merits over default judgment." *Cracco v. Vitran Exp.*, 559 F.3d 625, 631 (7th Cir. 2009). Defendant Comwarm satisfies each of these criterion.

---

[1] When Comwarm processed that notice of this Court's order on Friday morning local time in China, it was already after 9:00 p.m. in Chicago and counsel had already filed an appearance and requested a briefing schedule.

2

I.      **Judgment Should Be Vacated On Grounds Of Surprise. Comwarm was Surprised By The Quick Entry Of Default And Default Judgment**

Rule 60(1) permits vacatur based on, among other things, "surprise." *See* Fed. R. Civ. P. 60(1). Comwarm had previously retained counsel to defend similar Schedule A cases. Due to departures at the firm representing it in various matters, there was confusion as to whether this matter was being appropriately handled. When Comwarm retained new counsel, Deckers' motion for default had just been filed. *Compare* Huang Decl. ¶ 5 (counsel retained on March 24, 2026) *with* Deckers' Motion for Default (Dkt 18) (March 23, 2026).

Additionally, even after retaining new counsel, this Court's entry of default happened surprisingly quickly after it was filed. Although this Court does not require presentment of motions, there was a pending status hearing set for Monday, March 30, 2026 (Dkt 12), and this Court had already granted another late-filing defendant leave to respond or otherwise plead.[2] It would not have been unreasonable – but was in hindsight wrong – to infer that Deckers' motion would be discussed, presented, or heard in the Court's previously-set status hearing. Comwarm was surprised to learn that while working on an opposition to Deckers' motion, this Court had already granted it two days after its filing.

II.     **Comwarm has "Good Cause" for Setting Aside the Default Judgment**

Good cause for setting aside a default judgment can include "excusable neglect," which encompasses "both simple, faultless omissions to act and, more commonly, omissions caused by carelessness." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'hip*, 507 U.S. 380, 388 (1993). In Pioneer, the Supreme Court stated that the inquiry is:

> at bottom an *equitable* one, taking account of *all the relevant circumstances* surrounding the party's omission. These include . . . the danger of prejudice to the [defendant], the length of the delay and its potential impact on judicial proceedings,

---

[2] One of Comwarm's co-defendants, instead of responding to the motion for entry of default and default judgment, moved for leave to answer or otherwise plead. *See ITAJIA's* Motion (Dkt. 24). This Court granted the motion, tacitly excusing the untimeliness under Rule 6. *See* Dkt. 15.

the reasons for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id.* at 395.

Although Comwarm should have acted more quickly to respond, it did not intend to default and in fact was in the process of retaining counsel to defend it in this action, which was the *fifth* time that Deckers had sued Comwarm on the exact same claims after having been four times dismissed from lawsuits on the exact same claims. When this Court entered Default Judgment, Comwarm was in the process of preparing an opposition to Deckers' motion and a request for additional time to answer or otherwise plead. A Chinese company unfamiliar with *normal* civil litigation practice would have good reason to be confused about the situation. The chaotic nature of being sued, dropped, and repeatedly sued again contributes to the confusion as to the necessary response by a Chinese defendant receiving numerous pleadings in different cases all provided only in English. Neglect on this accelerated timeline, while regrettable, should be deemed excusable.

Finally, Deckers would not be unfairly prejudiced insofar as no activity has taken place on the merits, its motion for default would have been filed in any case because of the other non-appearing defendants and Deckers will still have to prosecute this suit against at least one of Comwarm's co-defendants, who this Court permitted to answer or otherwise plead despite also being untimely. As a result, Comwarm's efforts to oppose the motion for entry of default and default judgment meet the standards for "good cause" and "excusable neglect."

### A. Comwarm Took Quick Action to Vacate the Default

This motion follows just days after this Court entered default and default judgment. Delays of several weeks between the entry of default and a motion have been still considered quick enough under the "quick action" standard. *Delgado v. I.C. System,* No. 17-cv-04918, 2020 U.S. Dist. LEXIS 161367, at *6 (N.D. Ill. Sep. 3, 2020). Comwarm is unaware of any case in which a delay of just a handful of days between entry of default and a motion to vacate has failed to satisfy

4

the "quick action" standard. Indeed, the time between Comwarm's answer date (March 17, 2026) and this Court's default judgment order (March 26, 2026) is far shorter than nearly all courts permit as "quick action."

### B. Comwarm Has Numerous Meritorious Defenses

To satisfy the "meritorious defense" standard, a defense "does not need to be a clearly victorious argument, but it must contain more than bare legal conclusions." *Delgado v. I.C. System*, No. 17-cv-04918, 2020 U.S. Dist. LEXIS 161367 (N.D. Ill. Sep. 3, 2020) (quoting *Acosta v. DT & C Glob. Mgmt., LLC*, 874 F.3d 557, 561-62 (7th Cir. 2017) (cleaned up).

Here, Comwarm has several strong defenses to Deckers' claims including procedural and substantive defenses. Procedurally:

- This Court lacks personal jurisdiction over Comwarm because service of process was faulty and in violation of the Hague Convention;

and even if jurisdiction were proper,

- The claimed TASMAN trade dress is generic and at least one other Court has already entered summary judgment against Deckers on exactly that issue;

- The claimed TASMAN trade dress lacks secondary meaning and therefore cannot function as a source-identifying trade dress; and

- The claimed TASMAN trade dress is legally functional under the doctrines of utilitarian and/or aesthetic functionality and therefore is not a protectable trade dress.[3]

### 1. This Court Lacks Jurisdiction over Comwarm

A judgment is void when a court lacks personal jurisdiction over the defendant at the time the judgment was entered. *See Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982). A court lacks personal jurisdiction in the absence of proper service of process. Critically, relief under Rule 60(b)(4) is not discretionary. When a judgment is void, the

---

[3] It is also unlikely that Deckers could ever establish a likelihood of confusion as required under Section 43(a) of the Lanham Act, but this motion focuses on only the three defenses noted above.

5

district court is required to grant the motion. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270-71 (2010); *Philos Techs. v. Philos & D*, 645 F.3d 851, 855 (7th Cir. 2011) (judgment void for lack of personal jurisdiction must be vacated under Rule 60(b)(4)).

### a. The Hague Service Convention Applies and Is Mandatory.

The Hague Service Convention "applies in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." Hague Service Convention, Art. 1.[4] The Supreme Court has held that when the Hague Convention applies, compliance is mandatory. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988). This action requires transmitting service documents to China – a contracting State – making the Convention applicable.

Both the United States and the People's Republic of China, where Comwarm resides, are contracting parties to the Convention. China acceded to the Convention on July 3, 1991, with effect from May 1, 1992. Under Article 2 of the Convention, China designated the Ministry of Justice of the People's Republic of China as its Central Authority to receive and process service requests from foreign courts and parties. *See, Smart Study v. Shenzhenshixindajixieyouxiangongsi*, 164 F.4th 164, 166-67 (2d Cir. Dec. 18, 2025). Service on a Chinese defendant like Comwarm must proceed through the Central Authority – or through another channel specifically authorized by the Convention and not objected to by China – before any default can be entered. *Id.*

### b. China Has Objected to Alternative Service Channels, Including Email Service

Article 10 of the Convention permits certain alternative methods of service such as postal channels and direct service through judicial officers only in contracting states that do not object. *Smart Study,* 164 F. 4th at 166-67 *at* 170 (citing Declarations of the People's Republic of China,

---

[4] Full text of the convention is available, among other places, here https://perma.cc/XC9X-XCVG (last visited March 31, 2025).

https://perma.cc/UMT5-V35D) (last visited March 31, 2026). China has expressly objected to all Article 10 alternative service methods. *See* Hague Conference on Private International Law, Status Table, Convention of 15 November 1965, Declarations/Reservations of the People's Republic of China (available at https://perma.cc/TEF5-RF9Q) (last visited March 31, 2026) As a result, no alternative service channel under Article 10 is available for defendants like Comwarm, who are located in China.

Email service is not mentioned in the Convention. It is not an authorized alternative. The Second Circuit recently held that email service on a Chinese defendant does not constitute proper service under the Hague Convention and is preempted as an alternative method of service. *See Smart Study*, 164 F.4th at 174. In *Smart Study*, the court emphasized that because China objected to Article 10 alternative service channels, there is no basis – regardless of convenience or practicality – to substitute email for the Convention's prescribed Central Authority procedures. *Id.* at 174. Courts in this Circuit and elsewhere have reached the same conclusion. *See, e.g., Luxottica Grp. S.p.A. v. P'ships & Unincorporated Ass'ns*, 391 F. Supp. 3d 816, 820-21 (N.D. Ill. 2019)[5] (Hague Convention procedures mandatory for service on Chinese defendants);[6] *see also Noco Co. v. Chang*, No. 1:20-cv-2437, 2021 WL 1192212, at *3 (N.D. Ohio Mar. 30, 2021) (rejecting email service on Chinese defendant with known address as inconsistent with Hague Convention obligations); *Madu, Edozie & Madu v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 115 (S.D.N.Y. 2010) (email service improper where Hague Convention applies).

Plaintiff's service of a company organized under the laws of the People's Republic of China, by email violated the Hague Convention and cannot constitute proper service under Rule

---

[5] While some courts – even in this district – have differed on the Hague Convention, the trend appears to apply the correct interpretation of international law.
[6] This issue is currently on appeal to the Seventh Circuit in *Kangol LLC v. Hangzhou Chuanyue Silk Import*, No. 25-2205 (7th Cir.). The Court heard oral argument on last month on February 25, 2026. *Id.* (Dkt. No. 29).

4. Deckers' motion relied on counsel's unsupported statement that any such address was "unlikely to be legitimate." *See* Decl. Justin Gaudio in Supp. of Motion for Email Service (Dkt 11) ¶ 2. But even if that is true it is irrelevant. As the Second Circuit noted in *Smart Study,* "[e]ven if it is highly likely that service *via* the Hague Service Convention would be unsuccessful, compliance with the Convention is mandatory in all cases to which it applies." 164 F.4th at 172 (citing *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988). Because Deckers failed to comply with the requirements of the Hague Convention and made no effort to show why it should be disregarded, this Court never obtained personal jurisdiction over Comwarm and all actions taken against it were procedurally improper and constitutionally deficient.

2. Deckers Lacks Trade Dress Rights in the Claimed TASMAN Trade Dress

Beyond the service defect issue, COMWARM has substantial defenses to the merits that independently warrant *vacatur*. It is the longstanding policy in this Circuit that favors "trial on the merits over default judgment." *Cracco,* 559 F.3d at 631(citing *Yong-Qian Sun v. Board of Trustees*, 473 F.3d 799, 811 (7th Cir. 2007) *C.K.S. Eng'rs, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1205 (7th Cir. 1984) (collecting cases)). In cases other than those involving void judgment, a Court should vacate a default when (1) reasonable excuse for defaulting; (2) quick action to move to vacate; and (3) a meritorious defense to the complaint." *Id.* (cleaned up) *Milwaukee Electric Tool Corp. v. Individuals, Corps., Ltd. Liability Cos., P'ships, & Unincorporated Associations Identified on Schedule "A"*, No. 24 C 12487, 2025 U.S. Dist. LEXIS 216016, at *5 (N.D. Ill. Nov. 3, 2025) (*citing Cracco,* 559 F.3d at 631. To demonstrate a meritorious defense for Rule 60(b) purposes, a defendant need only put forth facts that, if proven, would constitute a cognizable defense. *Pretzel & Stouffer*, 28 F.3d at 46. Comwarm satisfies this standard.

a. *Deckers' Claimed Trade Dress Is Generic and Unprotectable.*

Trade dress protection extends only to product features that identify the source of a product, not to features that consumers understand as referring to a general category of goods. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). The overall appearance of the UGG TASMAN slipper which Deckers describes as embodying a trade dress describes literally hundreds of slippers for sale just in the United States.

Deckers claims it has rights to exclude others from making footwear that includes:

- o An embroidered braid around the opening of the upper;
- o A raised prominent seam on the front part of the upper running longitudinally down the center of the upper;
- o A raised and rounded dome shaped toe;
- o A brushed suede-like exterior; and
- o A thick, platform outsole.

Complaint at ¶ 17, pages 5-6 (Dkt 1).

Deckers' supposed trade dress describes a broad category of footwear that has been produced by hundreds of manufacturers. These features and appearance are generic and commonly used in the suede-and-sheepskin slipper market, not distinctive indicators of any single source. This situation here – with this particular style of footwear and the plethora of competitive alternatives – is the exact same as that facing the Northern District of California which found the same TASMAN design to be generic and therefore unenforceable because of, *inter alia*, the myriad of similar-looking alternatives. *See Deckers Outdoor v. Last Brand, Inc..,* No. 23-cv-04850-AMO, 2025 U.S. Dist. LEXIS 195922 (N.D. Cal. 2025) (granting summary judgment on genericness defense); *see also Deckers Outdoor Corp. v. Romeo & Juliette, Inc.,* No. 2:25-cv-04220-RGK-SK, 2026 U.S. Dist. Lexis 66958 at *48 (C.D. Cal. March 20, 2026) (finding that the claimed "Tasman" trade dress – the exact same trade dress claimed here – was generic and unenforceable). There, both courts found that the claimed trade dress for Deckers' TASMAN

suede slipper (the same trade dress that Deckers bases its entire lawsuit on here) was generic and thus unprotectable. *Id.*

Where claimed trade dress consists of elements that are generic to the product category, the trade dress is not protectable regardless of commercial success or advertising. *See, e.g., Two Pesos,* 505 U.S. at 768. Just as in the *Last Brand* case, evidence here — including third-party product offerings, industry practice, and consumer perception — will establish that the TASMAN design elements are generic across the suede shearling casual footwear category and cannot serve as protectable trade dress. *Last Brand, Inc..,* 2025 U.S. Dist. LEXIS 195922 at *13 (entering summary judgment against Deckers on the issue of genericness for the TASMAN design).

    b.  *Deckers' Claimed Trade Dress in the TASMAN Slipper Has not Attained Secondary Meaning.*

Comwarm would also prevail on its defense that the claimed TASMAN trade dress is not source identifying – *i.e.,* has not attained "secondary meaning." "[I]n an action for infringement of unregistered trade dress under 43(a) of the Lanham Act, a product's design is distinctive, and therefore protectable, only upon a showing of secondary meaning." *Wal-Mart Stores v. Samara Brothers,* 529 U.S. 205, 216 (2000). "Secondary meaning is established when a plaintiff, by use of its trade [dress] . . ., achieves in that [trade dress], a special significance to the public such that a substantial number of present or prospective customers understand [the trade dress] as referring to the person who holds the mark." *Roulo v. Russ Berrie & Co.,* 1986 U.S. Dist. LEXIS 26859 (N.D. Ill. April 14, 1986), *aff'd,* 886 F.2d 931 (7th Cir. 1989).

It is plaintiff's burden to show secondary meaning since its claimed trade dress is not registered. *E.g., Toyo Tire & Rubber Co. v. Atturo Tire Corp.,* No. 14-cv-00206, 2019 U.S. Dist. LEXIS 219398, at *4 (N.D. Ill. Dec. 20, 2019) Secondary meaning must be established either through survey evidence or "length and manner of use, amount and manner of advertising, volume of sales, place in the market, and evidence of intentional copying." 2 J. Thomas McCarthy,

MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 15.30 (4th ed. 1999). *HiSpec Wheel & Tire v. Tredit Tire & Wheel*, 2007 U.S. Dist. LEXIS 1870, \*13 (N.D. Ind. Jan. 8, 2007). Secondary meaning requires that consumers know that the product comes from a single source.

As noted above regarding genericness, it is highly unlikely that Deckers could show that any suede upper, thick-soled suede shearling lined slipper, constructed with a seam on a rounded toe box would necessarily originate from a single source. Indeed, the plethora of alternatives in nearly the same design strongly suggest otherwise. *See, e.g., Eldon Industries v. Rubbermaid, Inc.,* 735 F. Supp. 786, 834 (N.D. Ill. 1990) (third party use negates the "exclusive use" factor for finding secondary meaning); *see also Easy Spirit, LLC v. Skechers U.S.A., Inc.*, 515 F. Supp. 3d 47, 67 (S.D.N.Y. 2021) (extensive third-party use in trade dress shoe design case tended to negate secondary meaning claim). Also, there is at least some anecdotal evidence that slippers of this type do not originate from a single source but instead from a variety of different sources. *See, e.g.,* Gaston Korub, *Not Getting Duped* (March 24, 2026) (available at https://perma.cc/CME2-6TVG) (last visited March 31, 2026) (wherein the author asked his students "whether anyone would buy the Quince product thinking that it was an UGG product, the response was *unanimous as well that no right-thinking person would.*") (emphasis added).

Deckers has made little to no effort to satisfy its burden of showing secondary meaning, which it must since its claimed trade dress is not registered. *See, e.g., Tone Brothers v. Sysco,* 28 F.3d 1192 (Fed. Cir. 1994). In its complaint, it claims without any specifics that its design is "inherently distinctive." Compl. ¶ 17. Among the many problems with this claim is that "an unregistered product trade dress *cannot be* inherently distinctive . . .." *National Presto Industries v. United States Merchants Financial Group*, No. 18-cv-03321 (SRN/BRT), 2021 U.S. Dist. LEXIS 114054, at \*29 (D. Minn. June 18, 2021) (*citing Wal-Mart Stores, Inc.*, 529 U.S. at 216 ("[A] product's design is distinctive . . . only upon a showing of secondary meaning."); *see also id.* ("given

11

the *unlikelihood* of inherently source-identifying design, the game of allowing suit based upon alleged inherent distinctiveness seems to us not worth the candle."). The claim that it is "unique" in the industry, *see* Compl. ¶ 22, is belied by the number of defendants it has sued not only in this case but in numerous others. Given the numerous other similar looking platform suede slippers available in the sheepskin casual footwear market, even if Deckers' design wasn't deemed generic, it would be incapable of showing secondary meaning. *Deckers v. Romeo & Juliette, supra* at *48. Its claim to exclusive use is dubious.

Beyond this, other allegations attempting to show secondary meaning are lacking and often facially suspect. For example, Deckers alleges that Oprah Winfrey featured UGG boots on her "favorite things" show and proclaimed that she "LOOOOOOOVES [sic] her UGG boots." *See* Compl. ¶ 7. But what Deckers glosses over is that Oprah said that 26 years ago about a product that is not at issue in this case. Indeed, Deckers admits it first started selling the product at issue here more than 20 years *after* Oprah talked about a completely different product. Whatever Oprah said more than a quarter century ago about a different product has no bearing on whether its currently-claimed trade dress has secondary meaning.

Deckers' reference to advertising for products unrelated to the one at issue here and to promoting the UGG name rather than the claimed trade dress here fares no better. *See. e.g.,* Compl. ¶¶ 20-22. The USPTO rejected similar evidence when Deckers tried unsuccessfully to register their UGG boots. *See* Final Office Action Rejecting U.S. TRADEMARK APPLICATION NO. 87310138 – 122688 (Dec. 22, 2017) (available at https://bit.ly/419LISu) (hereafter "Final Rejection") (last visited March 31, 2026). There, the USPTO rejected Deckers' application to register its UGG boot (design shown below), which claimed to be distinctive, *inter alia*, based on an "exaggerated stitch pattern," Final Rejection at 12, stating that "[Deckers'] advertising and third-party materials show consumer recognition of the word mark "UGG" but

these are not probative of whether consumers associate the specific design elements claimed as features of the proposed mark with a single source." *Id.* at 6-7.[7]

     c.   *Deckers' Claimed Trade Dress Is Functional and Therefore Unprotectable*

Trade dress is functional — and therefore categorically ineligible for Lanham Act protection — if it is "essential to the use or purpose of the article or if it affects the cost or quality of the article." *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 165 (1995) (quoting *Inwood Labs. v. Ives Labs.*, 456 U.S. 844, 850 n.10 (1982)); *see also TrafFix Devices, v. Marketing Displays,* 532 U.S. 23, 33 (2001). The features Deckers identifies as its trade dress are precisely the functional characteristics that define what a slipper is and make it comfortable, warm, wearable, and easy to construct.

The case of *Deckers Outdoor Corp. v. It's Friday, Inc.* from the Southern District of New York – despite involving a completely different Deckers product – is nevertheless instructive. *See* No. 20-CV-10602 (VSB) (BCM), 2024 WL 5481211, at *6 (S.D.N.Y. Oct. 31, 2024), *report and recommendation adopted*, No. 20-CV-10602 (VSB) (BCM), 2025 WL 886882 (S.D.N.Y. Mar. 21, 2025). There, even after default, the magistrate judge examined Deckers' trade dress pleading and found it legally insufficient, describing a "laundry list" of features "with no explanation" of distinctiveness and identifying elements that were "quite obviously functional in the traditional sense." *Id.* The court recommended dismissal of the trade dress claims despite the absence of opposition. *Id.* While an entirely different product is at issue here, Deckers has done the same thing – namely, provided a "laundry list" of features without explanation of their distinctiveness or their lack of utilitarian or aesthetic functionality.

Permitting Deckers to monopolize the functional features of a suede slipper through trade dress law would give it an unfair competitive advantage — preventing competitors from making

---

[7] The design that Oprah declared one of her "favorite things" appears to be the same design that the USPTO rejected for registration as a protectable trade dress.

equally functional products — which is exactly the harm that the functionality doctrine is designed to prevent. *TrafFix*, 532 U.S. at 29. Comwarm would establish that the claimed trade dress elements are functional and thus unprotectable as a matter of law.

## CONCLUSION

Comwarm was admittedly neglectful to a limited extent, not responding to Deckers' complaint when it was due on March 17, 2026. But that neglect was minimal and excusable. Indeed, it was delay comparable to what this Court has already tacitly deemed excusable by permitting another defendant to respond to the complaint beyond the deadline. Penalizing Comwarm with a nearly $4 million judgment for a response delay of just two weeks does not serve justice, especially given the numerous defenses on the merits, any one of which would extinguish Deckers' case against Comwarm.

Dated: April 16, 2026

Respectfully submitted,

*/s/ Michael La Porte*

**Michael R. La Porte**
**William W. Flachsbart**
Dunlap Bennett & Ludwig, PLLC
333 N. Michigan Avenue, Suite 2700
Chicago, IL 60601
Telephone: (312) 551-9500
mlaporte@dbllawyers.com
wflachsbart@dbllawyers.com

*Counsel for Comwarm*

14

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing via electronic mail to all counsel of record who have filed an appearance in this matter.
The remaining parties I have served via electronic mail at the addresses listed below.

| Defendant/Seller Alias | Email Address |
|---|---|
| Comfortable home slippers | 1032839780@qq.com |
| B nice shoe | 1063458475@qq.com |
| litshoes | 1308465115@qq.com |
| crazy shoes LH | 13375818593@163.com |
| lijianl | 13530133965@139.com |
| Colorful Xus Boutique | 1360035951@qq.com |
| CBYY | 13600847013@163.com |
| hykzykxy | 13725686337@139.com |
| lxiaoyong | 13827800995@139.com |
| ███████ | ███████ |
| ███████ | ███████ |
| DUU Home Furnishing | 15606797880@163.com |
| KLKIT | 15815537162@163.com |
| Footwear Shop | 1585037694@qq.com |
| Jinyu Men Slippers | 1585037694@qq.com |
| GlamourSlippers | 15960147947@163.com |
| Freefoot Shoe | 16626709873@163.com |
| Coki | 17750601725@163.com |
| kuangzhil | 18024871520@139.com |
| AuraStride | 18119699870@163.com |
| bei duo | 18138982924@163.com |
| cai AA local | 18148749721@163.com |
| GANG YUE | 18350810316@163.com |
| A GlobeGem | 19139137107@163.com |
| LABADR | 19195589572@163.com |
| ApexEagle | 19539630704@163.com |
| Magic Flower | 20853204@qq.com |
| Mi Ju | 2170157767@qq.com |
| D S Ninetyninth Shop | 2510814210@qq.com |
| A Love yourself | 2515215066@qq.com |
| ERDAYE | 313336683@qq.com |
| Binggo fashion shoes | 314945593@qq.com |
| Home Cot Slippers a | 3167960969@qq.com |
| LYYShoes | 3364499043@qq.com |
| HAOHSHOP | 339610196@qq.com |
| guGood shopping in the province | 3532889625@qq.com |
| ███████ | ███████ |
| a Simple girl | 3965267344@qq.com |
| Huimo Slippers | 410713647@qq.com |
| DongQiaO | 45901904@qq.com |
| ChicNestBox | 494669581@qq.com |
| GH Ltd | 527354403@qq.com |

15

| | |
|---|---|
| GibaCat | 550008518@qq.com |
| Geryt | 572709386@qq.com |
| A clever rabbit | 649193831@qq.com |
| Han Te-US Trading Ltd. | 675375524@qq.com |
| Juan show shoes clothing | 710593427@qq.com |
| ██████████ | ██████████ |
| Li Dong Dong s best picks | 75260989@qq.com |
| chaopinkejiL | 85406530@qq.com |
| Butterflys love | 891550617@QQ.COM |
| MEISILING | 906411445@qq.com |
| M F Home textiles | 94490684@qq.com |
| Fashion Supplier | 990732158@qq.com |
| CLOUSPO Direct | clouspous@163.com |
| Bifang Home Living | cysm2024888@163.com |
| DFEff | df8oe871118@126.com |
| Djianx | djianx1988@163.com |
| Hot Hot Shoe Shop | dqwdqwdsqwdq@163.com |
| Briht | ftf57982707@163.com |
| abenbenzhu | imissyou010101@qq.com |
| Men Trend Slippers | Jackiesumaitong@163.com |
| Fashion Kitty | jej929dscm@163.com |
| ██████ | ██████████ |
| ████████ | ██████████ |
| HKTWOJS | XGJS011@163.com |
| HKTREKA | XGKX011@163.com |
| Cydmoty | younggajia@outlook.com |
| Gtlive | yy202312130933@163.com |
| BanQu Slippers | zengbolin1234@outlook.com |
| Earnesthope | zhuyingbao78@yeah.net |

*/s/ Michael R. La Porte*
Michael R. La Porte

16